FRANKLYN *v.* PEABODY.

1. PHYSICIANS AND SURGEONS—TRESPASS—ASSAULT AND BATTERY.
   Where a surgeon, in operating on patient's stiff finger, discovered that, to obtain best results, it would be necessary to remove some *fascia lata* from patient's limb, and, after consulting with surgeon in charge, but without consulting patient, who was under anesthetic, made an incision in her thigh for such purpose, the operating surgeon in so doing committed a trespass to her person and both he and the surgeon who counseled and advised such action are jointly and severally liable in an action for assault and battery; no emergency calling for immediate action for preservation of life or health of patient having arisen.

On liability of physician for performing surgical operation without consent of patient, see annotation in 1 L. R. A. (N. S.) 439; 7 L. R. A. (N. S.) 609; 50 L. R. A. (N. S.) 880.

2. SAME—UNAUTHORIZED OPERATION NOT EXCUSED ALTHOUGH WELL
PERFORMED.

> An unauthorized operation may be well performed and in line
> with good surgery and still afford no excuse for such trespass
> to the person.

3. SAME—TRIAL—INSTRUCTIONS.

> In action for assault and battery against a surgeon for un-
> authorized removal of *fascia* from plaintiff's thigh for purpose
> of perfecting operation on stiff finger, defendant was not
> entitled to an instruction that the jury consider "solely the
> question whether the removal of the *fascia* was justified under
> the testimony of the surgeons."

4. SAME.

> In said action there was no error in the instruction that, without
> plaintiff's consent, surgeon had no right to cut into her thigh
> and remove some *fascia lata.*

5. SAME—DAMAGES—EXCESSIVE VERDICT.

> Verdict of $10,000 for unauthorized operation on plaintiff's
> thigh was excessive where no future damages were claimed,
> and damages for pain and suffering and for loss of earnings
> were confined to two years and nine months.

Error to Wayne; Root (Jesse H.), J., presiding.
Submitted October 23, 1929. (Docket No. 106, Cal-
endar No. 34,607.) Decided January 24, 1930. Re-
hearing denied March 7, 1930.

Case by Vera Franklyn against Charles W. Pea-
body and Henry Ford Hospital, a Michigan corpora-
tion, for malpractice and an assault and battery in
the performance of an unauthorized surgical opera-
tion. From a directed verdict for defendant hos-
pital, plaintiff brings error. From a judgment *non
obstante veredicto* for defendant Peabody, plaintiff
and defendant Peabody bring error. Judgment *non
obstante veredicto* for defendant Peabody reversed,
and new trial granted.

*Colby & Costello,* for plaintiff.

*Longley & Middleton,* for defendant Peabody.

WIEST, C. J.  Plaintiff had a stiff finger, resulting from an injury. She visited the Ford hospital in the city of Detroit, and was advised by Dr. Peabody, defendant herein, that an operation would be beneficial. Defendant is a member of the staff of the hospital, and had charge of the assigning of such cases to assistant doctors. Plaintiff's case was assigned to Dr. Fallais. The day of the operation Dr. Fallais and Dr. Peabody were otherwise engaged, and Dr. Johnston was assigned to perform the operation. An anesthetic was administered. Dr. Johnston opened the finger and palm of the hand and discovered that the superficial and deep tendons adhered together and to separate them it was necessary to sheathe each in added *fascia.* Upon discovering this, Dr. Johnston summoned Dr. Peabody, and the two doctors discussed the need of added *fascia,* and Dr. Peabody agreed with Dr. Johnston that it would be necessary, in order to obtain the best results, to remove some *fascia* from a limb of plaintiff and transplant it to her hand, and also told Dr. Johnston to go ahead and perform the operation in that manner. The plaintiff was unconscious, and, therefore, not consulted, and Dr. Johnston made an incision in her right thigh, obtained therefrom *fascia lata,* and sheathed the tendons of the finger.

Plaintiff claims that the operation on her thigh resulted in a muscle hernia, causing her pain and disability, and brought this suit against the Ford hospital and Dr. Peabody to recover damages.

The trial judge discharged the Ford hospital, did not grant the motion in behalf of Dr. Peabody for a directed verdict, and submitted the case to the jury, and plaintiff was awarded a verdict of $10,000 for the injury to her leg.

The declaration counted on malpractice, and an assault and battery or trespass to plaintiff's person

by an unauthorized operation upon her thigh. The proofs were directed to the latter count, and the recovery was for an assault and battery. After verdict defendant renewed his motion and asked for judgment in his favor *non obstante veredicto,* and also moved for a new trial. The court entered judgment for defendant, and plaintiff reviews by writ of error. Defendant also assigns error upon the trial, to be considered only in case the judgment is not affirmed.

Accepting plaintiff's claim as true, Dr. Johnston, in operating upon her thigh without her consent, committed a trespass to her person for which he would be liable to respond in damages in an action for assault and battery. Authority to this effect is ample.

The governing rule, supported by modern authority, is well stated in 48 C. J. p. 1130:

"Where a patient is in possession of his faculties and in such physical health as to be able to consult about his condition, and no emergency exists making it impracticable to confer with him, his consent is a prerequisite to a surgical operation by his physician; and a surgeon who performs an operation without his patient's consent, express or implied, commits an assault for which he is liable in damages."

An exception to the rule exists, and the extent thereof is also stated in 48 C. J. p. 1131:

"Where an emergency arises calling for immediate action for the preservation of the life or health of the patient, and it is impracticable to obtain his consent or the consent of anyone authorized to speak for him, it is the duty of the physician to perform such operation as good surgery demands, without such consent. And if, in the course of an operation to which the patient consented, the physician discovers conditions not anticipated before the opera-

tion was commenced, and which, if not removed, would endanger the life of the patient, he will, although no express consent be obtained or given, be justified in extending the operation to remove and overcome them. * * * The implied appointment of the surgeon as the legal representative, during the period òf unconsciousness, of a patient who has appointed no other person, does not give the surgeon a license to operate on the patient against his will or by subterfuge, or to perform a different operation than that consented- to, or one involving risks and results not contemplated.''

See *Mohr* v. *Williams,* 95 Minn. 261 (104 N. W. 12, 1 L. R. A. [N. S.] 439, 111 Am. St. Rep. 462, 5 Ann. Cas. 303); *Pratt* v. *Davis,* 224 Ill. 300 (79 N. E. 562, 7 L. R. A. [N. S.] 609, 8 Ann. Cas. 197); *Rolater* v. *Strain,* 39 Okla. 572 (137 Pac. 96, 50 L. R. A. [N. S.] 880).

The stated rule exacts careful diagnosis by the surgeon, and discovery, as far as possible, of the nature and extent of the proposed operation and consent thereto by the patient.

The operation on plaintiff's finger was not a major one, and the disclosure, when the finger and palm were opened, presented no emergency authorizing an operation on her thigh to obtain tissue for the finger. The case does not present the essentials of an implied authority arising from discovery, while performing an operation, of a condition so serious to the life or health of the patient as to demand a more extended or a further operation without consulting the patient. Good surgery undoubtedly required the acquisition of tissue to sheathe the tendons in the finger and palm, but this did not authorize the taking of tissue for that purpose from the thigh of plaintiff without her consent. The operation on plaintiff's thigh constituted an assault, not justified

by any emergency, and not authorized by plaintiff or within the implied appointment of the surgeon employed to operate upon the finger.

The question here is not whether good surgery justified the operation upon the thigh to obtain the *fascia lata*. An unauthorized operation may be well performed and in line with good surgery and still afford no excuse for such a trespass to the person.

Under the evidence, Dr. Johnston and Dr. Peabody are jointly and severally liable; Dr. Johnston for performing an unauthorized operation, and Dr. Peabody for counseling and advising him to perform the same. We confine our opinion, relative to the rights of a patient and the duty and liability of surgeons, to the particular case before us.

The court was in error in entering judgment for defendant. This brings us to consideration of the errors assigned by the defendant.

The court was not in error, at the close of the proofs, in refusing to direct a verdict in favor of the defendant. Defendant was not entitled to an instruction that the jury consider "solely the question as to whether the removal of the *fascia* was justified under the testimony of the surgeons."

What we have said disposes of the other requested instructions refused by the court.

There was no error in the instruction to the jury that, without the consent of the plaintiff, the surgeon had no right to cut into her thigh and remove some *fascia lata*.

In the motion for a new trial, defendant made the point that the verdict was excessive in amount. The court entered judgment in favor of defendant, and, therefore, found no occasion to pass upon the question of whether the verdict was excessive. We think the verdict excessive. This is best illustrated by the

instruction to the jury upon the subject of damages. We quote the instruction:

"Now, what are the damages? The testimony in this case, it seems to me, is not particularly satisfactory on this subject of damage. There can be no recovery in this action for any future damages. In other words, there is no testimony in this case that this plaintiff will continue to suffer pain because of this operation; there is no testimony in this case as to the length of time she may be prevented by reason of this operation from earning her livelihood. I think, on the contrary, that it appears from the evidence, and it is not disputed by the plaintiff, that this plaintiff has to some extent, at least, been able to earn money. I think it appears beyond a reasonable doubt that at the present time she is operating concessions and has operated concessions within the last year or such matter, but there is no testimony hereupon which I would be justified in submitting to you the question of damages so far as future loss of earnings is concerned. It would be entirely too speculative for me to permit that to be done. Therefore, the only damages which you can allow to the plaintiff are such damages as she may have sustained by reason of this operation from the time of it until the present time. I do not think there is any testimony in this case, members of the jury, that would justify me in submitting to you any questions of damage by reason of the injury to the hand, because there is no claim here that the operation was not done skilfully; there is no complaint made as to that, and, as I have said, the only complaint is of the operation performed to her without her consent, but there is no complaint as to the skill with which the operation on her hand was performed. Therefore, you may not take into consideration, in awarding damages, any claim for injury to her hand or to her finger. As I have said, there is no testimony in this record relative to future earning capacity of

the plaintiff, Vera Franklyn, therefore I charge you, that you can only take into consideration such loss of earnings as the plaintiff has sustained from the date of her operation to the present time, and not take into consideration any future loss of earnings whatsoever. As I view this case there are two elements of damages, which you would be justified in considering this case, that is, the amount that she should be allowed for pain and suffering, if you find that she has endured any pain or suffered any, and also such an amount as would compensate her for any loss of earnings by reason of this operation from the time of it until the present time.

"Now, damages for pain and suffering are not easily computed. It is not such damages as you could award in a contract action, for instance, so many bushels of wheat at so much a bushel, nevertheless, if the plaintiff is entitled to recover at all, and if she has suffered anything for the past two years, she is entitled to be compensated for it, and what you should allow to her, therefore, is such a sum as under the evidence in this case will fairly compensate her for such pain and suffering as you find under the evidence she has suffered. If you find that she has suffered no pain, of course, you cannot allow her anything, but, if, under the evidence of this case, you find that she has endured pain and suffered by reason of this so-called hernia of the leg, and further find that that hernia was caused as a result of this operation, then it would be your duty to allow her, in awarding damages, such an amount as you in your sound judgment believe will fairly compensate her for that. As to the other element of damages, you would allow her such sum as you find she has lost in earning capacity. Any wages or earnings since the date of the operation to the present time, that is, any loss of wages or earning capacity since the date of the operation to the present time, you would allow her for that such a sum as you find under the evidence she has lost by reason

of being laid up and unable to work, if you find such to be the case—because of this injury."

The operation was performed on the 14th day of December, 1925, and the trial was commenced on the 14th day of September, 1928. The instruction limited the jury to an award of damages during a period of two years and nine months. During that period plaintiff suffered from a muscle hernia at the place where the *fascia lata* was removed from her thigh, and she claims that this occasioned her pain by protrusion of the muscle, when standing upon her leg, and nervousness caused by the quivering of the muscle. Considering the limited period, and having in mind the evidence bearing upon the question of the suffering occasioned plaintiff by the muscle hernia and the extent to which the hernia incapacitated her from pursuits she otherwise would have been able to follow, and the effect thereof upon her earning capacity, we think the jury awarded an excessive amount of damages. For this reason the defendant is entitled to a new trial.

The judgment notwithstanding the verdict is reversed, and a new trial is granted defendant, the costs of this court to abide the result of a new trial.

BUTZEL, CLARK, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred. McDONALD, J., took no part in this decision.