PATTERSON v ESTATE OF FLICK

OPINION OF THE COURT

1. LIMITATION OF ACTIONS—MALPRACTICE—PHYSICIANS AND SURGEONS.
   A cause of action based on malpractice against a state licensed physician must be brought within two years of the time when the physician discontinues treating or otherwise serving the plaintiff, or within two years of the time when plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the asserted malpractice, whichever is later.

2. LIMITATION OF ACTIONS—MALPRACTICE—DISCOVERY OF MALPRACTICE—DISCONTINUANCE OF TREATMENT—STATUTES—PHYSICIANS AND SURGEONS.
   The plaintiff in a malpractice action, arising after plaintiff's right femoral nerve was severed during an appendectomy, discovered the asserted malpractice immediately following the operation when she experienced paralysis and numbness in her right leg and she was informed by her doctor that he severed the nerve; therefore, plaintiff's action was barred by the statute of limitations where the litigation was commenced approximately 4-1/2 years after discovery of the asserted malpractice and 3-1/2 years after discontinuance of treatment by the doctor (MCLA 600.5805[3], 600.5838; MSA 27A.5805[3]; 27A.5838).

3. LIMITATION OF ACTIONS—FRAUDULENT CONCEALMENT—AFFIRMATIVE ACTS.
   Fraudulent concealment requires actions of an affirmative character to purposely conceal the right of action from a plaintiff.

DISSENT BY W. S. WHITE, J.

4. LIMITATION OF ACTIONS—MALPRACTICE—DISCOVERY RULE.
   *The limitation statute in malpractice cases does not start to run*

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4, 5] 61 Am Jur 2d, Physicians and Surgeons §§ 181–185.

[3] 51 Am Jur 2d, Limitation of Actions §§ 146–152.

[6] 61 Am Jur 2d, Physicians and Surgeons §§ 212–214.

[7] 47 Am Jur 2d, Jury § 14.

[8] 51 Am Jur 2d, Limitation of Actions § 450.

[9] 37 Am Jur 2d, Fraud and Deceit §§ 331, 423–425, 432–436.

*until the date of discovery or the date when, by the exercise of reasonable care, the plaintiff should have discovered the invasion of a legal right belonging to the plaintiff.*

5. Limitation of Actions—Malpractice—Discovery of Malpractice—Jury—Reasonable Person—Physicians and Surgeons.

*The plaintiff in a malpractice action, arising after plaintiff's right femoral nerve was severed during an appendectomy, did not discover her cause of action until she visited a specialist over four years after the operation who told her she would never recover total use of the leg, although the plaintiff had been informed immediately after the operation that her nerve had been cut and that her right leg was at least temporarily paralyzed; however, the case should be remanded for a jury disposition of whether a reasonable person would have discovered the malpractice at an earlier date.*

6. Trial—Malpractice—Determination of Facts—Jury—Pleadings—Reasonable Minds.

*A trial court should, after a motion for accelerated judgment in a malpractice case, avoid empaneling a jury for a determination of facts where reasonable minds could not differ as to the facts and conclusions to be drawn from the pleadings.*

7. Jury—Reasonability.

*The determination of reasonability is generally within the sole province of the jury.*

8. Limitation of Actions—Fraudulent Concealment—Estoppel.

*A party who has deliberately misled a potential plaintiff by concealment or otherwise in order to induce a belief that a cause of action does not exist is estopped from relying upon the statute of limitations.*

9. Fraud—Pleadings—Court Rules.
*Fraud must be specially pleaded (GCR 1963, 112.2).*

Appeal from Oakland, James S. Thorburn, J. Submitted November 14, 1975, at Detroit. (Docket No. 22324.) Decided May 27, 1976. Leave to appeal applied for.

Complaint by Margaret Patterson against the estate of Dr. John R. Flick, deceased, for damages for malpractice. Accelerated judgment for defendant. Plaintiff appeals. Affirmed.

*Marston, Sachs, O'Connell, Nunn & Freid, P. C.* (by *Barry P. Waldman),* for plaintiff.

*Kitch & Suhrheinrich, P. C.* (by *Paul W. Hines),* for defendant.

Before: BASHARA, P. J., and D. F. WALSH, and W. S. WHITE,* JJ.

BASHARA, P. J. We adopt the statement of facts from the dissenting opinion of Judge WHITE. However, we cannot agree with the result reached by Judge WHITE.

In Michigan a cause of action based on malpractice against a state licensed physician must be brought within two years of the time when the physician discontinues treating or otherwise serving the plaintiff, or within two years of the time when the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the asserted malpractice, whichever is later. *Dyke v Richard,* 390 Mich 739, 747; 213 NW2d 185 (1973).

The complaint alleges negligence on the part of Dr. Flick in severing the appellant's femoral nerve during an appendectomy in April of 1969. As a matter of law the appellant discovered the asserted malpractice when she was informed by Dr. Flick immediately following the operation that he severed the nerve and she experienced paralysis and numbness in her right leg. Dr. Flick continued to treat the appellant for approximately one more year.

The litigation in the case at bar commenced in November of 1973, approximately 4-1/2 years after discovery of the asserted malpractice and 3-1/2 years after discontinuance of treatment by Dr. Flick. The trial judge correctly granted accelerated

---

* Circuit judge, sitting on the Court of Appeals by assignment.

judgment, GCR 1963, 116.1(5), on the ground the
action was barred by the statute of limitations.
MCLA 600.5805(3); MSA 27A.5805(3), and MCLA
600.5838; MSA 27A.5838. *Dyke v Richard, supra.*

We believe that if the discovery rule is expanded
to the extent suggested in the dissenting opinion,
it would virtually be impossible to obtain acceler-
ated judgment grounded on the statute of limita-
tions. Most people do not recognize the fact that
they have suffered an "invasion of a legal right"
until they consult with an attorney. To forestall
the running of the statute of limitations to that
point would, for all practical purposes, abolish the
statute of limitations in medical malpractice cases.

Nor do we agree with appellant's contention
that Dr. Flick fraudulently concealed the malprac-
tice tolling the statute of limitations. MCLA
600.5855; MSA 27A.5855. Fraudulent concealment
requires actions of an affirmative character to
purposely conceal the right of action from the
plaintiff. *De Haan v Winter,* 258 Mich 293; 241
NW 923 (1932). Appellant's complaint failed to
allege that Dr. Flick intentionally concealed the
cause of action.

Affirmed. Costs to appellees.

D. F. WALSH, J., concurred.

W. S. WHITE, J. *(dissenting).* In April of 1969, the
plaintiff, Margaret Patterson, underwent an ap-
pendectomy. During the course of this operation,
her right femoral nerve was first severed and then
resutured by the surgeon, Dr. John R. Flick, now
deceased.

Upon her arousal from the anesthetic, the plain-
tiff was informed of this unexpected complication
by Dr. Flick himself. The immediate effects of the
injury were readily apparent to the plaintiff; she

could neither move nor had any feeling in her right leg. The doctor, however, told the plaintiff's mother that she would be all right. During the post-operative period, the doctor assured the plaintiff that she was not permanently crippled but that recovery would be slow. He explained to her the importance of the femoral nerve and the functions it performs as part of the leg's nervous system. The plaintiff recalls that the excuse tendered for the mishap was that the nerve was wrapped around the appendix in an extremely freakish fashion and that the doctor was unaware of its presence until the damage had already been done.

The plaintiff's condition improved over the next year. By May of 1970 she was able to walk quite well but still suffered a loss of sensation. Although the plaintiff saw numerous other doctors subsequent to her operation, she never requested an examination of her leg. In fact, it was not until June of 1973 that the plaintiff sought additional consultation with specific reference to the injured appendage and then only when it became swollen and painful to walk upon. During this latter examination, the plaintiff was told that she would never recover the total use of her leg and was advised to consult an attorney.

This suit was filed in November of 1973 alleging malpractice on the part of Dr. Flick. The defendant replied with a motion for accelerated judgment alleging that since two years had passed since the cause of action accrued, the statute of limitations had expired and plaintiff's suit was barred.[1]

---

[1] MCLA 600.5805; MSA 27A.5805 provides a basic statute of limitations for injuries to persons or property in Michigan:

"No person may bring or maintain any action to recover damages for injuries to persons * * * unless, after the claim first accrued * * * he commences the action within the periods of time prescribed by this section * * * (3) The period of limitations is two years for actions charging malpractice."

MCLA 600.5838; MSA 27A.5838 further defines the statute of

Following extensive oral argument and the sub-
mission of briefs, the trial court granted the de-
fendant's motion and dismissed the case with prej-
udice. The learned trial judge noted in passing
that it was "a very close case * * * a borderline
affair". Nevertheless, the plaintiff "did know the
nerve had been cut, and she knew what the results
were, and they were substantial".

From this dismissal the plaintiff now appeals
raising, in essence, two questions for consideration.
They will be discussed *seriatim.*

## I

The plaintiff contends that the so-called "Discov-
ery Rule" prevents the judicial imposition of accel-
erated judgment and that a jury must settle cer-
tain fundamental factual issues before such a mo-
tion may be decided. GCR 1963, 116.3. Since my
analysis of the relevant authorities reveals the
need for some clarification of this rule, I will delve
briefly into its origins and rationale.

The "Discovery Rule" evolved out of judicial
efforts to grapple with the litigationally famous
"Lost Sponge" cases and related problems. *Byers v
Bacon,* 250 Pa 564; 95 A 711 (1915), and *Huysman
v Kirsch,* 6 Cal 2d 302; 57 P2d 908 (1936). Courts
came to recognize that, in certain situations, tradi-
tional concepts of limitations of actions led "to
harsh injustices and [afforded] a cloak for the
careless and ignorant". *Huysman, supra,* 6 Cal 2d

limitations for malpractice alleged against a state licensed profes-
sional:

"A claim based on a malpractice of a person who is, or holds
himself out to be, a member of a state licensed profession accrues at
the time that person discontinues treating or otherwise serving the
plaintiff in a professional or psuedo-professional capacity as to the
matters out of which the claim for malpractice arose."

at 306; 57 P2d at 910, citing *Huysman v Kirsch,* 47 P2d 332, 334 (Cal App, 1935). A patient could be operated upon and stoically suffer mysterious and debilitating consequences for years afterward. Alas, by the time the cause of the malady was found to be an errant surgical implement rather than disease or external injury, the patient's cause of action had become a victim of the statute of limitations.

In response to this sad state of affairs, the Supreme Court of California announced the rule that the statute of limitations in malpractice cases would not run so long as the patient was "in ignorance of the cause of his disability and could not with reasonable care and diligence ascertain such cause". *Huysman, supra,* 6 Cal 2d at 312; 57 P2d at 913.

While at first limited to cases in which a foreign body was negligently left in the body, the "Discovery Rule" has since been expanded to include negligent introduction of drugs or medication, *Agnew v Larson,* 82 Cal App 2d 176; 185 P2d 851 (1947); negligent diagnosis, *Calvin v Thayer,* 150 Cal App 2d 610; 310 P2d 59 (1957); and injury to noninvolved organs during surgery, *Dobbins v Clifford,* 39 App Div 2d 1; 330 NYS2d 743 (1972). See 80 ALR2d 368, § 7 (supps 1968 and 1975).

Michigan adopted the discovery rule in its mature form in 1963 and applied it to a case of negligent diagnosis. *Johnson v Caldwell,* 371 Mich 368; 123 NW2d 785 (1963). Justice O'HARA said:

"Simply and clearly stated the discovery rule is: The limitation statute or statutes in malpractice cases do not start to run until the date of discovery, or the date when, by the exercise of reasonable care, the plaintiff should have discovered the wrongful act." 371 Mich at 379.

The rule has since become firmly established as a judicially carved exception to the statutory provisions which govern limitation of actions in malpractice cases. *Dyke v Richard,* 390 Mich 739; 213 NW2d 185 (1973). Yet, despite its apparent simplicity, the parties to the instant case have pointed out the need for additional clarification.

In *Johnson, supra,* it was held that the statute of limitations did not commence to run until the patient knew or was charged with knowing that a "wrongful act" had been committed. In *Dyke, supra,* the court chose to describe the necessary quantum of knowledge as knowledge of the "asserted malpractice". The *Dyke* opinion also contains the following:

"As to a person who does not know, or in the exercise of reasonable diligence could not ascertain within the two year period that he has a *cause of action,* this statute has the effect of abolishing his right to bring suit." (Emphasis supplied.) 390 Mich at 746–747.

Other jurisdictions have added to the confusion. Under Federal law, the statute begins to run when the plaintiff discovers, or should have discovered, the "acts" which constitute the alleged malpractice. *Ashley v United States,* 413 F2d 490 (CA 9, 1969), *Quinton v United States,* 304 F2d 234 (CA 5, 1962). In Delaware, the crucial moment is "when the harmful effect first manifests itself and becomes physically ascertainable". *Layton v Allen,* 246 A2d 794, 798 (Del, 1968). The Hawaiian courts have held that a cause of action accrues when the plaintiff knows or should know of defendant's "negligence". *Yoshizaki v Hilo Hospital,* 433 P2d 220, 223 (Hawaii, 1967).

While it might be argued that the various formulae set forth above are meant to be synony-

mous, so long as the phrases are bandied about like shuttlecocks, the courts, counsel and their clients will continue to be ill-served. To remedy this situation, it behooves me to elevate the phrase "wrongful acts" as used in *Johnson, supra,* to the status of a term of art.

In ordinary speech, "wrongful" connotes both "harm" and "injury". In law, however, the two latter words are functionally distinct. The Restatement of Torts, 2d, § 7, defines "harm" as "the existence of loss or detriment in fact of any kind to a person from any cause". In contract, "injury" is "the invasion of any legally protected interest of another".

In the medical context, the infliction of harm is not necessarily actionable. An operation might be performed with technical perfection upon a patient who has been informed of every conceivable risk. The mere fact that the subsequent results do not measure up with previous expectations does not give the disappointed patient any right to recover in tort.

On the other hand, the infliction of injury is almost always actionable, improvement in the condition of the patient notwithstanding. See *Franklyn v Peabody,* 249 Mich 363; 228 NW 681 (1930).

With this distinction in mind, I conclude that the term "wrongful acts" as used in the *Johnson* discovery rule should be equated with the term "injury" as that word is defined in the Restatement of Torts, *supra. Hall v Musgrave,* 517 F2d 1163, 1168, n 2 (CA 6, 1975) (Celebrezze, J, dissenting). When this reconstruction is made, the *Johnson* discovery rule reads as follows:

"The limitation statute or statutes in malpractice cases do not start to run until the date of discovery, or

the date when, by the exercise of reasonable care, the plaintiff should have discovered [the invasion of a legal right belonging to the plaintiff]."

Here, the plaintiff was immediately informed that her nerve had been cut and that her right leg was at least temporarily paralyzed. She thus had knowledge of both an "act" and resulting "harm". Viewing her pleadings and deposition in a light most favorable to her, it is equally clear that she did not, in fact, "discover" her cause of action until she visited a specialist in June of 1973. Whether a reasonable person would have discovered that these acts constituted an injury at an earlier date remains to be demonstrated. I would remand for a jury disposition of this factual question. *Winfrey v Farhat,* 382 Mich 380; 170 NW2d 34 (1969). GCR 1963, 116.3.

This decision should not be interpreted as mandating a jury determination of facts whenever the pleadings or evidence raise a discovery rule question. Where reasonable minds could not differ as to the facts and conclusions to be drawn therefrom, the trial court may, and should, avoid the needless expense and delay involved in the empaneling of a jury. *E.g., Walerych v Isaac,* 63 Mich App 478; 234 NW2d 573 (1975).

However, the determination of *reasonability* is generally within the sole province of the jury. Through both training and experience, the members of the bench have become comfortably accustomed to dealing with the intricacies of the legal process. In doing so, we frequently have the opportunity to inlay our own presumably sensitive notions of rationality and reasonableness upon the mundane circumstances in which the litigants find themselves. It is a temptation to be resisted. Our legal system entrusts such matters to a panel of

disinterested citizens whose varied daily experiences endow them with a curious mixture of innocence and common sense. It is this unique quality which confers upon their decisions the worldly patina which is sometimes absent from purely judicial determinations. Reasonability is an elusive concept incapable of definition except by contrast with the expectations of the community. The representatives of that community, *i.e.,* the jury, should have the final vote.

## II

In view of my decision as to the application of the discovery rule, it seems provident to go on to discuss plaintiff's second issue in order to allay any confusion which may arise upon remand.

Simply stated, the plaintiff requests this Court to decide whether the alleged malpractice was "fraudulently concealed" so as to toll the running of the statute of limitations. MCLA 600.5855; MSA 27A.5855.

In doing so, the plaintiff inferentially asks this Court to rewrite her pleadings. The opportunity must be respectfully declined.

Reduced to its essentials, fraudulent concealment is nothing more than an affirmative riposte to a limitation of action defense. The concept is premised upon the proposition that statutes of limitations are shields designed to protect the unwary from the prosecution of musty claims dredged up by tardy plaintiffs. However, where a defendant has deliberately misled a potential plaintiff by concealment or otherwise, in order to induce the belief that a cause of action does not, in fact, exist, that defendant seeks to use the statute of limitations as a sword. It is this latter use which

is forbidden by law. The concealing party is estopped from relying upon the statute because his prior actions indicate both a timely knowledge of possible liability and the deliberate intent to avoid same by subterfuge.

An essential element in any claim of fraudulent concealment is, of course, fraud itself. Fraud must be specially pleaded. GCR 1963, 112.2.[2] In any event, since fraudulent concealment is in the nature of an affirmative defense, the party seeking to raise it must give at least some indication thereof in its pleadings. GCR 1963, 111.7.

The plaintiff has met neither of these requirements despite ample opportunity to do so. The first inkling of any claim of fraudulent concealment is found to have occurred during the motion hearing at which plaintiff's case was dismissed. There, the issue was raised in response to a leading question by the court. The only other indication of such a claim—and here we have the benefit of hindsight —is discovered in paragraph 10 of the complaint wherein the plaintiff alleges "negligent concealment". This Court has not been enlightened as to the taxonomy of this strange animal. It will suffice to say, however, that it may be distinguished from fraudulent concealment by its inherent lack of specific intent, *i.e.,* the deliberate intent to deceive and mislead. *De Haan v Winter,* 258 Mich 293; 241 NW 923 (1932), *Eschenbacher v Hier,* 363 Mich 676; 110 NW2d 731 (1961).

---

[2] Along with the elements of fraud itself, the California courts have added three additional allegations which must be contained in the pleadings before a claim of fraudulent concealment will be sustained: (1) the complaint must allege when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) facts must be alleged to show that plaintiff is not at fault for failing to discover the fraud sooner, and that the plaintiff has no actual or presumptive knowledge of facts sufficient to put him on inquiry. *Original Mining and Milling Co v Casad,* 210 Cal 71; 290 P 456 (1930), as quoted in *Stafford v Shultz,* 42 Cal 2d 767; 270 P2d 1, 8 (1954).

If the plaintiff feels that she has sufficient evidence to prove fraudulent concealment, she may, should the trial court choose to permit it, amend her pleadings to indicate such a claim. At this juncture, no more need be said.

I would reverse and remand for further proceedings consistent with this opinion.