SCHALM v MT. CLEMENS GENERAL HOSPITAL

Docket No. 77-1114. Submitted January 16, 1978, at Detroit.—Decided
   April 18, 1978.

   Carl Schalm and Ethel J. Schalm brought an action for medical
   malpractice in treating the cancers of Carl A. Schalm against
   Mt. Clemens General Hospital and eight individual doctors.
   During the litigation Carl Schalm died and thereafter his
   estate was substituted as a party plaintiff for him. The Macomb
   Circuit Court, Robert J. Chrzanowski, J., granted an acceler-
   ated judgment of dismissal to all defendants on the ground that
   all claims were barred by the malpractice two-year statute of
   limitations. Plaintiffs appeal. *Held:*

      An action based on malpractice must be brought within two
   years of discontinuance of treatment or otherwise serving
   plaintiff or within two years of the time when plaintiff discov-
   ers or should discover the asserted malpractice, whichever is
   later. However, if disputed fact issues exist on either point of
   the statute of limitations analysis, summary dismissal by accel-
   erated judgment is improper. Accelerated judgment was im-
   proper in this case because, on the record, there was some room
   to question whether the plaintiff knew or should have known
   that malpractice had been committed. A plaintiff is not charged
   with knowledge of the contents of his medical file for discovery
   of malpractice.

      Reversed and remanded.

1. LIMITATION OF ACTIONS—MALPRACTICE—SUMMARY DISMISSAL.

   An action based on malpractice by a state licensed person must
      be brought within two years of the time when such person
      discontinues treating or otherwise serving the plaintiff, or
      within two years of the time when the plaintiff discovers, or in
      the exercise of reasonable diligence should have discovered, the
      asserted malpractice, whichever is later; if disputed fact issues

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 61 Am Jur 2d, Physicians and Surgeons § 181 *et seq.*
   Statute of limitations applicable to malpractice action against
      physician, surgeon, dentist, or similar practitioner. 80 ALR2d 320.
[2] 61 Am Jur 2d, Physicians and Surgeons § 213.

exist on either point of the statute of limitations analysis, summary dismissal by accelerated judgment is improper (MCLA 600.5805[3], 600.5838; MSA 27A.5805[3], 27A.5838).

2. LIMITATION OF ACTIONS—MALPRACTICE—DISCOVERY OF MALPRAC-
   TICE—REASONABLE DILIGENCE—ACCELERATED JUDGMENT—QUES-
   TION OF FACT.

   Discovery of malpractice or, when it should have been discovered in the exercise of reasonable diligence, is the primary question in determining the limitations on malpractice actions; where no reasonable minds could differ on the discovery question, an accelerated judgment may be proper; the fact that a plaintiff is given a correct diagnosis should not always require that he be charged with notice that an earlier, and later known to be incorrect, diagnosis was malpractice and under such circumstances, accelerated judgment would be improper because there is some room to question whether plaintiff knew or should have known that malpractice had been committed.

3. MALPRACTICE—DISCOVERY OF MALPRACTICE—MENTAL STATE—
   FRAUDULENT CONCEALMENT—AWARENESS OF MALPRACTICE AC-
   TION—LIMITATION OF ACTIONS.

   A plaintiff's knowledge of his true condition is but one factor in evaluating the question of the reasonableness of his efforts to discover asserted malpractice; also relevant might be plaintiff's mental state, assurances by medical personnel falling short of fraudulent concealment, and information received from others which show plaintiff was aware of his cause of action.

4. MALPRACTICE—DISCOVERY OF MALPRACTICE—PHYSICIANS AND SUR-
   GEONS—MEDICAL FILES—DUTY TO PATIENT—LIMITATION OF AC-
   TIONS.

   A patient should not have to question his physician, for the purpose of discovering malpractice, about the contents of his medical file as to whether tests have been recommended by specialists sought by the physician and not performed; the responsibility of conveying this type of information should be with the physician, not the patient.

*Dietrich, Cassavaugh, Fogelson & Perkins,* for plaintiffs.

*Sullivan, Ranger, Ward & Bone,* for defendant Schmunk.

*Dice, Sweeney, Sullivan & Feikens, P. C.,* for defendants Ward, Phardel, Fagen and Rudnikoff.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen* (by *Robert P. Siemion),* for defendant Mt. Clemens General Hospital.

*Schureman, Frakes, Glass & Wulfmeier* (by *Robert A. Obringer),* for defendants Ragheb, Matthews, Jr., and Rousseau.

Before: T. M. BURNS, P. J., and M. F. CAVANAGH and D. C. RILEY, JJ.

T. M. BURNS, P. J. This is a medical malpractice action against Mt. Clemens General Hospital and eight individual doctors. Plaintiff[1] filed his complaint and four subsequent amended complaints seeking to recover for the alleged malpractice of the various defendants in the discovery and treatment of a cancer. On motions brought by defendants, the trial court granted accelerated judgment, GCR 1963, 116.1(5), holding that all claims against the defendants were time barred under MCLA 600.5805(3); MSA 27A.5805(3) and MCLA 600.5838; MSA 27A.5838.[2]

Our review of the trial court's determination is guided by two principles: first, under the above cited statutes, "an action based on malpractice by a state licensed person must be brought within two years of the time when such person discontinues treating or otherwise serving the plaintiff, or within two years of the time when the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the asserted malpractice,

---

[1] Carl Schalm, the named plaintiff in this case, died on February 14, 1976, and thereafter his estate was substituted as a party plaintiff.

[2] We are concerned with the statute as it existed before the amendments of 1975 PA 142.

whichever is later", *Dyke v Richard*, 390 Mich 739, 747; 213 NW2d 185 (1973); second, if disputed fact issues exist on either point of the statute of limitations analysis, summary dismissal by accelerated judgment is improper, *Kelleher v Mills*, 70 Mich App 360; 245 NW2d 749 (1976).

The facts which apply to the statute of limitations question allow us to consider the defendants in two groups; those who treated plaintiff before February 1, 1971,[3] and those treating him after that date.[4] The asserted malpractice of the defendants in the first group is a failure to run appropriate tests and diagnose plaintiff's malady as cancer, rather than an ulcer, before plaintiff was told he had cancer on February 1, 1971. None of the doctors in this group treated plaintiff after January 14, 1971. They were made defendants in the original complaint filed on April 19, 1974,[5] the first[6] and second[7] amended complaints filed May 10, 1974, and September 15, 1975, respectively.

The alleged malpractice of the second group is failure to note a possible second cancer or to perform[8] an endoscopic exam in February of 1971. The exam was performed after seven months, in September of 1971, and a further cancer discovered which led to more surgery at that time. These defendants were brought into the case by the

---

[3] The defendants in this group are Mt. Clemens General Hospital, Dr. Moufid Ragheb, M. D., Dr. Robert C. Ward, D. O., Dr. John W. Phardel, Dr. Robert O. Fagen, D. O. and Dr. Peter Rudnikoff, D. O.

[4] The defendants in the second group include Dr. Christian Matthews, Jr., M. D., Dr. Robert F. Schmunk, M. D., and Dr. Daniel Rousseau, M. D.

[5] The hospital, and defendants Dr. Ward, Dr. Phardel and Dr. Ragheb.

[6] Dr. Fagen.

[7] Dr. Rudnikoff.

[8] Slightly different facts apply to Dr. Rousseau, but he may still be considered with this group.

third[9] and fourth[10] amended complaints filed January 29, 1976, and June 15, 1976.

## I

We turn our attention to the first group of doctors. None of these doctors treated plaintiff after January 14, 1971. The first complaint in this case was filed April 19, 1974. Obviously, unless there are fact questions under the "discovery" branch of the accrual rule, accelerated judgment as to these defendants was proper.

Defendants argue there are no fact questions. They argue that as a matter of law, plaintiff was put to inquiry about their possible malpractice in misdiagnosing his ailment when he was told he had cancer in February of 1971. Under this argument, plaintiff knew or should have known, of the asserted malpractice in the incorrect diagnosis as soon as the correct diagnosis was made. Primary reliance is placed on *Johnson v Caldwell,* 371 Mich 368; 123 NW2d 785 (1963), and *Patterson v Estate of Flick,* 69 Mich App 101; 244 NW2d 371 (1976), *lv granted,* 399 Mich 838 (1977), and we admit that language in these cases supports this proposition, even though neither is a true misdiagnosis case.[11]

[9] Drs. Matthews and Schmunk.

[10] Dr. Rousseau is a radiologist who read x-rays in February of 1971. He did not note the fourth lesion discovered in September of 1971 in his report. It was noted by Dr. Curatolo ten days later, but Drs. Matthews and Schmunk did not act on Dr. Curatolo's recommendation contained in his report until September of 1971.

[11] In *Johnson,* the malpractice was misadvice. The plaintiff had been told that nothing could be done for her problem. She was charged with discovery of her cause of action when she was later told that surgery would correct her condition. 371 Mich at 380.

In *Patterson,* the plaintiff was told immediately after surgery that a nerve had been accidentally severed during surgery. She was charged with notice of her claim at that time.

For a collection of cases dealing with improper diagnosis as it is affected by the discovery accrual rule, *see* 80 ALR2d 368, § 7.

Under *Dyke,* the question is when was the "asserted *malpractice"* discovered or, when should it have been discovered in the exercise of reasonable diligence. Does the fact that plaintiff is given a correct diagnosis always require that he be charged with notice that the earlier, and now known to be incorrect, diagnosis was malpractice? We think not.

There will be cases where no reasonable minds could differ on the discovery question and accelerated judgment would be proper in such a case. However, in this case there is some room to question whether plaintiff knew or should have known that this first group of doctors had committed *malpractice* when he was told of his true condition in February of 1971.

Plaintiff's knowledge of his true condition is but one factor in evaluating the question of reasonableness of his efforts to discover the asserted malpractice. See, *e.g., Cates v Frederick W Bald Estate,* 54 Mich App 717; 221 NW2d 474 (1974), *lv den,* 394 Mich 758 (1975), *Patterson v Estate of Flick, supra,* (W. S. WHITE, J., dissenting). Also relevant might be the plaintiff's mental state, assurances by medical personnel falling short of fraudulent concealment, and information received from others which show plaintiff was aware of the cause of action.[12]

On the record before us, reasonable minds could differ as to the date plaintiff must be charged with knowledge of the asserted malpractice. Accelerated judgment as to this group of defendants was improper.

## II

The same principles guide our analysis of the

---

[12] *See, Cates v Bald Estate, supra,* and *Kelleher v Mills, supra,* and *Winfrey v Farhat,* 382 Mich 380; 170 NW2d 34 (1969).

claims against the second group of doctors. Drs. Matthews and Schmunk continued to treat plaintiff, even after they were joined in this suit, until his death. However, it is unclear whether this treatment was "as to the matters out of which the claim for malpractice arose".[13] Given the circumstances of this case, we do not believe it is necessary to determine how broadly or narrowly those terms should be applied and again turn to the discovery portion of the accrual rule.

The three doctors involved in this part of the case were responsible for the diagnosis of plaintiff's cancer and the first surgery in February of 1971. Drs. Schmunk and Matthews were also responsible for performance of the endoscopic examination in September of 1971. This led to discovery of a second[14] cancerous area and its surgical removal. The alleged malpractice by Drs. Matthews and Schmunk is failure to read and act on a radiologist report prepared by Dr. Curatolo in February of 1971, which indicated the possibility of this second cancer and do the tests recommended in the report at that time rather than waiting until September of 1971. The alleged malpractice of Dr. Rousseau is failure to note the second cancer when he read the x-rays in February of 1971.

Although defendants argue that Dr. Curatolo's report was in the hospital file and, therefore, with reasonable diligence, plaintiff could have discovered their alleged malpractice long before they were actually brought into the suit in 1976, it

---

[13] This phrase appears in MCLA 600.5838; MSA 27A.5838 and appears to be a further limitation of the rule stated in *DeHaan v Winter*, 258 Mich 293; 241 NW 923 (1932).

[14] Actually, this was a fourth cancerous area, three others having been discovered and removed in the February surgery.

appears that plaintiff (and plaintiff's counsel) first learned of the possibility that the second cancer was diagnosable in February of 1971 (as opposed to its actual discovery date in September of that year) when Dr. Curatolo was deposed on January 15, 1976. Defendants also argue that when the recommended exam was performed and the second cancer discovered in September of 1971, the failure to act in February of 1971 was readily apparent and, therefore, the statute of limitations should run from that date.

We reject the contention that because Dr. Curatolo's report was in the hospital file, a fact not shown on this record, that plaintiff is charged with knowledge of its contents from that date. Plaintiff is alleging that he was never informed of the necessity for an endoscopic exam in February of 1971. It seems unfair that we should require a patient to question his physician about the contents of his medical file as to whether tests have been recommended by specialists sought by the physician and not performed. The responsibility of conveying this type of information must be with the physician, not the patient.

A jury might infer that plaintiff could, with reasonable diligence, have discovered the asserted malpractice within a short time after the second cancer was found in September of 1971. But, we will not hold that such is the only possible finding. There are other medical-factual possibilities for the existence of this abnormal growth in September of 1971. Plaintiff had knowledge that this area should have been examined and the cancer diagnosed earlier only when Dr. Curatolo was deposed in January of 1976. Under *Whitney v Gallagher,* 64 Mich App 46; 235 NW2d 57 (1975), accelerated judgment was improperly entered as to this second group of defendants.

Reversed and remanded for further proceedings

not inconsistent with this opinion. Costs to abide the final result.