JACKSON v VINCENT

Docket No. 45359. Submitted April 1, 1980, at Detroit.—Decided May 20, 1980.

Gaynella Jackson, hereinafter plaintiff, brought a malpractice action against Dr. Charles Vincent and St. Joseph Mercy Hospital. Defendant Vincent moved for summary judgment and defendant St. Joseph Mercy Hospital moved for accelerated judgment; both motions based upon plaintiff's alleged failure to comply with the statutory period of limitations governing medical malpractice actions. The Wayne Circuit Court, Myron H. Wahls, J., granted both motions without a written opinion. Plaintiff appeals. *Held:*

1. The suffering of pain followed by consulting a medical specialist does not constitute knowledge of malpractice as a matter of law, even where the pain disappeared following a second operation.

2. The Court of Appeals views with disfavor a determination, by granting accelerated judgment, that a plaintiff is aware that a surgeon's conduct was tortious.

3. The six-month limitation period for medical malpractice actions commences to run from a time when a patient is informed of the condition which causes the pain or disability and in addition is informed that the act which caused the pain or disability need not have been done.

4. Accelerated judgment is improper in medical malpractice cases where material factual disputes exist regarding discovery of the alleged malpractice.

5. A patient need not be informed that an act constituted malpractice for the six-month limitation period to commence.

Remanded with instructions.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 4] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 188 *et seq.*
[3] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 182, 183.
[5] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 183.

1. PHYSICIANS AND SURGEONS — TORTS — MALPRACTICE — KNOWL-
   EDGE.

   The suffering of pain followed by consulting a medical specialist
   does not constitute knowledge of malpractice as a matter of
   law, even where the pain disappeared following a second opera-
   tion.

2. PHYSICIANS AND SURGEONS — TORTS — MALPRACTICE — ACCELER-
   ATED JUDGMENT.

   The Court of Appeals views with disfavor a determination, by
   granting accelerated judgment, that a plaintiff is aware that a
   surgeon's conduct was tortious.

3. LIMITATION OF ACTIONS — PHYSICIANS AND SURGEONS — MALPRAC-
   TICE.

   The six-month limitation period for medical malpractice actions
   commences to run from the time when a patient is informed of
   the condition which causes the pain or disability and in addi-
   tion is informed that the act which caused the pain or disabil-
   ity need not have been done (MCL 600.5838[2]; MSA
   27A.5838[2]).

4. PHYSICIANS AND SURGEONS — MALPRACTICE — ACCELERATED JUDG-
   MENT.

   Accelerated judgment is improper in medical malpractice cases
   where material factual disputes exist regarding discovery of the
   alleged malpractice.

5. PHYSICIANS AND SURGEONS — MALPRACTICE — LIMITATION OF AC-
   TIONS.

   A patient need not be informed that an act constituted malprac-
   tice for the six-month limitation period for medical malpractice
   to commence (MCL 600.5838[2]; MSA 27A.5838[2]).

*Clifford R. Williams,* for plaintiff.

*Charfoos & Charfoos, P.C.* (by *Dennis W. Archer),* for defendant Vincent.

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.,* for defendant St. Joseph Mercy Hospital.

Before: J. H. GILLIS, P.J., and ALLEN and BEAS-
LEY, JJ.

ALLEN, J. In response to plaintiff's complaint against defendants alleging malpractice occurring during surgery on plaintiff in September 1975, defendant, St. Joseph Mercy Hospital (Hospital), moved for accelerated judgment, and defendant, Dr. Charles Vincent (Doctor), moved for summary judgment. Both motions were predicated upon plaintiff's alleged failure to comply with the statutory period of limitations governing malpractice suits, MCL 600.5805(3); MSA 27A.5805(3). Following a hearing, the trial judge, without written opinion, granted both motions May 18, 1979. From that decision plaintiff appeals of right.

Abdominal surgery was performed on plaintiff by defendant Doctor at the premises of defendant Hospital September 18-19, 1975. Following the operation, plaintiff complained of severe pain in the area of the surgery and, because of said pain, consulted a second doctor who placed plaintiff in Mount Sinai Hospital in August, 1977. She was operated on by the second doctor at Mount Sinai Hospital on August 3, 1977, who discovered that two nerves were firmly entrapped in the scar where Dr. Vincent had operated in 1975 and had sewn up with sutures. On September 9, 1977, plaintiff retained an attorney who promptly demanded that defendant Hospital send him plaintiff's medical records. The operation report dated August 15, 1977, was furnished to plaintiff's attorney on October 15, 1977. Nevertheless, the bill of complaint was not filed until December 11, 1978.

Prior to July 9, 1975, a cause of action for malpractice by a state-licensed physician was required to be commenced within two years of the time the physician last treated the plaintiff or within two years of the time when the plaintiff discovers, or in the exercise of reasonable diligence

should have discovered, the asserted malpractice, whichever is later. *Patterson v Estate of Flick,* 69 Mich App 101, 103; 244 NW2d 371 (1976), *Dyke v Richard,* 390 Mich 739, 747; 213 NW2d 185 (1973). In 1975 the Legislature shortened the period of limitations by amending MCL 600.5838(2); MSA 27A.5838(2) to read:

"An action involving a claim based on malpractice may be commenced at any time within the applicable period prescribed in sections 5805 or 5851 to 5856, *or within 6 months after the plaintiff discovers or should have discovered the existence of the claim,* whichever is later. The burden of proving that the plaintiff, as a result of physical discomfort, appearance, condition or otherwise, neither discovered nor should have discovered the existence of the claim at least 6 months before the expiration of the period otherwise applicable to the claim shall be on the plaintiff. A malpractice action which is not commenced within the time prescribed by this subsection is barred." (Footnote omitted.) (Emphasis supplied.)

Section 5805 sets forth a two-year period of limitations and neither § 5851 nor § 5856 are pertinent to the factual situation in the instant case.[1] Since the amendatory statute was in effect when Dr. Vincent performed the operations in September, 1975, and since it is evident that plaintiff exceeded the two-year limitation, the controlling question becomes when, by the exercise of reasonable diligence, should the plaintiff have discovered the existence of a claim.

Two cases of this Court have spoken to what is required in order to conclude as a matter of law that a person has or should have discovered as-

---

[1] Section 5851 relates to actions by or on behalf of infants or the insane. Section 5856 sets forth conditions for tolling of the statute following filing of the complaint and service on defendant.

serted malpractice. *Leary v Rupp,* 89 Mich App 145; 280 NW2d 466 (1979), *Leyson v Krause,* 92 Mich App 759; 285 NW2d 451 (1979). While both cases noted that accelerated judgment is improper where material factual disputes exist regarding discovery of the alleged malpractice, both cases stated:

"[K]nowledge of the act and resulting injury alone may be insufficient to commence the running of the statute of limitations. On the other hand, it is not necessary that the plaintiff recognize that she has suffered an 'invasion of a legal right'. *Patterson v Estate of Flick,* 69 Mich App 101; 244 NW2d 371 (1976). We conclude that in order to discover 'asserted malpractice' a person must know of the act or omission itself, *i.e.,* prescribing polycillin, and have good reason to believe the act itself was improper or was done in an improper manner.

"Under certain circumstances mere knowledge of the act will be sufficient because it alone gives good reason to believe it was improper. For example, in *Patterson, supra,* the defendant severed a femoral nerve during an appendectomy resulting in paralysis.

"In contrast, a person may know of both the act and some resulting pain but not be aware of any wrongdoing by defendant." *Leary, supra,* 149.

Defendants point to four evidentiary items, each contained in the pleadings or responses to interrogatories, showing that as early as August 15, 1977, and no later than October 15, 1977, plaintiff knew or had good reasons to know she had a claim. These are: (1) that following the operation by her second doctor in 1977 the pain disappeared (Paragraph 5 of plaintiff's answer to the Hospital's motion for accelerated judgment); (2) Mount Sinai Hospital records stating that the pre-operative and post-operative diagnosis of plaintiff's difficulty was entrapment of ilioinguinal nerves, and that plain-

tiff was so informed by her second doctor in August 1977; (3) that within a month of the August 1977 operation, plaintiff retained an attorney; (4) that in August 1977 plaintiff was told by her second doctor that there was no need for Dr. Vincent to have cut and/or sewn the nerves into muscle tissue (plaintiff's answer to Dr. Vincent's interrogatory #5).

We are not persuaded that items (1) through (3) either singly or collectively were sufficient to inform plaintiff that she had a claim. The suffering of pain followed by consulting a medical specialist does not constitute knowledge of malpractice. *Farris v Beecher,* 85 Mich App 208, 213; 270 NW2d 658 (1978). Knowledge of an operation and subsequent pain is insufficient in itself to make a patient aware of wrongdoing in the operation. *Leary, supra.* In the instant case, we have the added element that the pain disappeared following the second operation. But even that, to us at least, is not enough to conclude that, *as a matter of law,* plaintiff has knowledge of a claim for malpractice.

Item (2) is unpersuasive since there is no showing or allegation that plaintiff was shown or told about the records from Mount Sinai Hospital. The records which plaintiff's counsel obtained on or about October 15, 1977, were the records from St. Joseph Mercy Hospital where the operation which is claimed to have been negligently performed took place. Naturally, the records from that hospital would not put counsel on notice that a malpractice claim existed.

Nor can we say that consulting an attorney is sufficient proof that plaintiff was aware she had a claim for malpractice. This Court views with disfavor determining by accelerated judgment that a plaintiff is aware that a surgeon's conduct was

tortious. *Whitney v Gallagher,* 64 Mich App 46; 235 NW2d 57 (1975), *Kelleher v Mills,* 70 Mich App 360; 245 NW2d 749 (1976), *Weiss v Bigman,* 84 Mich App 487; 270 NW2d 5 (1978), *Ellis v Lauter,* 93 Mich App 584; 287 NW2d 192 (1979). Even if plaintiff had been informed by her second doctor that the cause of her two year discomfort was nerves sewn into abdominal tissue, a fact which for purposes of this case may well have occurred, and which we will assume did occur, it does not necessarily follow that the act causing the discomfort was improper or negligently performed. While correct knowledge of one's condition may make one suspicious and cause him or her to seek an attorney, this Court stated in *Schalm v Mt Clemens General Hospital,* 82 Mich App 669, 674; 267 NW2d 479 (1978):

"There will be cases where no reasonable minds could differ on the discovery question and accelerated judgment would be proper in such a case. However, in this case there is some room to question whether plaintiff knew or should have known that this first group of doctors had committed *malpractice* when he was told of his true condition in February of 1971.

"Plaintiff's knowledge of his true condition is but one factor in evaluating the question of reasonableness of his efforts to discover the asserted malpractice."

We believe item (4) may well be dispositive of the question of whether plaintiff knew she had a claim. Defendant Vincent contends that following the operation at Mount Sinai Hospital in early August, 1977, plaintiff was not only told by her then doctor that nerves were found stitched in scar tissue where Dr. Vincent had operated but, in addition, was informed that there was no need for the nerves to have been so cut or stitched. Defen-

dant Vincent asserts this fact is evidenced by plaintiff's answer to his interrogatory #5.[2]

"5. Please state with specificity your basis for your allegation in paragraph 7 that Dr. Vincent was negligent in entrapping the ilioinguinal nerve in the incision where surgery was performed on or about September 18, 1975."

"You will note in the operation report dated 8-15-77, dictated by Dr. Scher (see Exhibit "A"), that he found upon exploration of the area that the right ilioinguinal and right iliohypogastric nerves had been firmly entrapped in scar in the subcutaneous area, and could not be freed, and thusly with lysis (loosening or freeing the nerves) impossible, the nerves had to be cut. That the doctors indicated, had indicated, and will testify at trial, that these nerves were stitched into the tissue and that there was no need to cut these nerves for the medical operation which the client had submitted to by DR. VINCENT."

Plaintiff argues that even if she were told that it was unnecessary to have sewn the nerves into the abdominal area, this was insufficient to place her on notice since her doctors "did not tell plaintiff in this case that the other doctors had committed an act of malpractice". In other words, plaintiff contends that not only must the patient be told that something which caused pain need not have been done, but in addition, must be informed that the act is malpractice. We disagree. To interpret or construe the statute in such manner would open the door to abuse. In effect, it would eliminate the "discovers or should have discovered the existence

---

[2] It should be noted that defendant Hospital does not claim that plaintiff was told it was unnecessary to have stitched or cut the nerves. The Hospital claims that plaintiff was told of her condition, viz:—that certain nerves were found stitched in her abdomen where the earlier operations had been performed and that knowledge of this fact alone as a matter of law places plaintiff on notice that she has a claim for malpractice.

of the claim" language of the statute until after a plaintiff goes to an attorney and the attorney obtains a medical opinion clearly stating that the act in question constitutes negligence. In our opinion, the six month period commences to run where a patient is informed of the condition which causes the pain or disability and in addition is informed that the act which caused the pain or disability need not have been done. *Leyson, supra,* 764, *Leary, supra,* 149.

If Dr. Vincent's assertion is true, then, as a matter of law, plaintiff's claim would be barred because she would have actually discovered her claim nearly 16 months prior to the filing of her complaint, ten months beyond the period authorized by MCL 600.5838(2); MSA 27A.5838(2). In contrast, if plaintiff was not actually told by her second physician that Dr. Vincent acted improperly in cutting and/or sewing the nerves into muscle tissue, but only discovered her claim against the doctor within six months of the filing of the complaint, then we would be required to reverse the lower court's judgment and remand for consideration by the jury of whether, in light of the evidence, plaintiff "should have discovered the existence of the claim". MCL 600.5838(2); MSA 27A.5838(2).

The problem in the case before us is that plaintiff's response to interrogatory #5 does not specify the date when plaintiff was informed that Dr. Vincent need not have sewn or cut the nerves in question. It is true that the doctors "indicated, had indicated and will testify at trial", but the date they had so indicated is not given. It is not at all improbable that plaintiff was not so informed until after her attorney, after receipt of the records from St. Joseph Hospital, had followed up by

contacting Dr. Scher and Mount Sinai Hospital and their conclusions were not given to plaintiff's attorney until some period six months prior to the filing of the bill of complaint. This possibility is strongly suggested at page 12 of the transcript of the hearing on the motions for accelerated and summary judgment. At that hearing, plaintiff was represented by attorney Clifford Williams who explained that Ronald G. Kraft was the initial counsel and the one who filed the bill of complaint. Mr. Williams stated he did not have personal knowledge of when attorney Kraft first knew that there was malpractice and would like a postponement so that Mr. Kraft might come in and testify or submit affidavits "relative to when he obtained the information as to the act of malpractice". In the same transcript at page 15, attorney Williams stated:

"* * * if the Court wants me to get into this motion and will not allow me time to get documents from this doctor in California and we have not had time—then I will go into the argument as far as this matter is concerned but the primary purpose of my argument today is that we can show, if given time that this woman was never told by anyone that an act of malpractice had been committed on her.

"Now, when Mr. Kraft, who was the prior attorney in this matter, filed this action in December of 1978, he filed it based on knowledge at that time from another doctor that had given him an opinion in November of 1978 that an act of malpractice had been committed."

Attorney Williams' request for a postponement was denied. We believe that this was a mistake since we fail to see how a decision on the motion for accelerated judgment could be made without a determination of if, and at what date, plaintiff or her counsel were first informed that stitching the

nerves in question was an unnecessary act of surgery.

Nevertheless, reversal and remand to the trial court for trial by jury[3] is not the proper remedy at this time. Instead, the trial court should make a finding of fact on the limited question posed in issue (4) above. This is a threshold question which properly may be decided by the court. For this purpose the trial court should hold an evidentiary hearing to determine if plaintiff or her counsel were in fact told of Dr. Vincent's unnecessary act, and if so, the date that plaintiff or her counsel were so informed. At said hearing, the testimony or depositions of Dr. Scher, attorney Ronald Kraft, and plaintiff should be taken. If, at the conclusion of said hearing, the trial court shall find that plaintiff or her counsel was so informed of defendant Vincent's unnecessary act and that such information was given in August 1977, or at any date six months prior to the filing of the bill of complaint December 11, 1978, then the trial court's grant of accelerated and summary judgment is affirmed. But, if at the conclusion of said hearing the trial court shall find that neither plaintiff nor her counsel was so informed until within six months of December 11, 1978, the judgment of the trial court is reversed and trial shall be had by jury. At said trial, the jury shall then decide the issue posed by MCL 600.5838(2); MSA 27A.5838(2), of whether, based on all the evidence introduced at trial, including evidence relating to items (1) through (4) inclusive, plaintiff discovered or should have discovered the existence of a claim. *Leyson, supra,* 764, *Leary, supra,* 149.

Remanded in accordance with this opinion. This Court does not retain jurisdiction.

---

[3] Plaintiff made a timely demand for jury.