BANKS v WITTENBERG

1. PHYSICIANS AND SURGEONS—MALPRACTICE—EXPERT WITNESSES—
   GENERAL PRACTITIONERS—SPECIALISTS.

   A medical specialist may testify in a trial for medical malpractice
   as to the standard of care of a general practitioner or answer
   hypothetical questions about breach of that standard where the
   specialist has knowledge about the standard of care about
   which he is testifying.

2. TRIAL—WITNESSES—WITNESS LISTS—COURT'S DISCRETION—SCOPE OF
   TESTIMONY—COURT RULES.

   A trial court's decision to allow a witness, who was not listed on
   the witness list prior to trial, to testify at trial is largely a
   matter of discretion; the court's discretion extends as well to
   the scope of testimony given by the unlisted witness (GCR 1963,
   301.10).

3. NEGLIGENCE—PHYSICIANS AND SURGEONS—MALPRACTICE—EVI-
   DENCE—MEDICAL RECORDS—CREDIBILITY—IMPEACHMENT.

   A trial court in an action for damages for malpractice may admit

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 61 Am Jur 2d, Physicians and Surgeons §§ 106, 110, 112–116, 202–
205.

Necessity of effort evidence to support an action for malpractice
against a physician or surgeon. 81 ALR2d 597.

Competency of physician or surgeon or school of practice other than
that to which defendant belongs to testify in malpractice case. 85
ALR2d 1022.

Medical malpractice: necessity and sufficiency of showing medical
witness' familiarity with particular medical or surgical technique
involved in suit. 46 ALR3d 275.

[2] 81 Am Jur 2d, Witnesses § 74.

[3, 4, 6] 61 Am Jur 2d, Physicians and Surgeons § 198.

[4] 5 Am Jur 2d, Appeal and Error § 806.

[5] 75 Am Jur 2d, Trial §§ 588–590, 592.

[6] 61 Am Jur 2d, Physicians and Surgeons § 214.

[7] 61 Am Jur 2d, Physicians and Surgeons § 155 *et seq.*

Liability of physician or surgeon for extending operation or treat-
ment beyond that expressly authorized. 56 ALR2d 695.

Mental competency of patient to consent to surgical operation or
medical treatment. 25 ALR3d 1439.

records from a medical clinic which includes history and diagnosis information regarding the plaintiff where the evidence is used to test the credibility of plaintiff's expert, who has relied on the records in making his diagnosis, and to impeach plaintiff's testimony concerning the effect surgery had on him where the records were introduced for impeachment purposes and not to prove the truth of the matters recorded therein.

4. APPEAL AND ERROR—EVIDENCE—HOSPITAL RECORDS—MALPRACTICE.

Reversible error was not shown in an action for medical malpractice where the trial court admitted hospital records made by a physician who was not called as a witness where the facts contained in the records were corroborated by a subsequent treating physician who testified for the plaintiff.

5. NEGLIGENCE—PLEADING—RESTATEMENT OF CLAIM—TRIAL—JURY INSTRUCTIONS—BREACH OF CONTRACT—MALPRACTICE.

A trial court properly refused to give a requested instruction on breach of contract, in an action for damages for malpractice, where the plaintiff alleged a breach of contract between a doctor and himself to perform proper and necessary medical care in executing a surgical operation and where the allegations which supported the breach of contract count merely restated a negligence claim and where the complaint and proofs did not support the requested instruction on breach of contract.

6. NEGLIGENCE—MALPRACTICE—EVIDENCE—PHYSICIANS AND SURGEONS—MEDICAL RECORDS—INSTRUCTIONS TO JURY.

A plaintiff in an action for medical malpractice is not entitled to an instruction to the jury that the absence of a notation in defendant's medical record could be considered as evidence that an event did not occur; however, the plaintiff is entitled to argue the effect of the missing notation to the jury.

7. PHYSICIANS AND SURGEONS—ASSAULT AND BATTERY—PATIENT'S CONSENT—EXPRESS—IMPLIED.

A physician commits an assault and battery and may be required to respond in damages where he treats or operates on a patient without consent or where consent has been given but the scope of the consent is exceeded; the necessary consent may be express or implied; courts have resorted to the fiction of implied consent to justify an emergency procedure where there is no opportunity to obtain actual consent and to infer consent from a patient's action of seeking treatment or some other act

manifesting a willingness to submit to a particular course of treatment.

Appeal from Wayne, Paul Harvey, J. Submitted November 16, 1977, at Detroit. (Docket No. 31188.) Decided April 3, 1978. Leave to appeal applied for.

Complaint by Clinton V. Banks and Ordella Banks against S. S. Wittenberg, M.D., S. I. Lerman, M.D., and Livernois Clinic, P. C., for damages for malpractice. Judgment for defendants. Plaintiffs appeal. Affirmed.

*Turner & Turner, P. C.* (by *Lee I. Turner* and *Carol Petsko),* for plaintiffs.

*Moll, Desenberg, Purdy, Glover & Bayer,* for defendants.

Before: BRONSON, P. J., and ALLEN and T. M. BURNS, JJ.

T. M. BURNS, J. This is a medical malpractice action. A vasectomy was performed on plaintiff Clinton V. Banks by one of the defendant doctors in the Livernois Clinic on an outpatient basis on March 5, 1971. Complications, including a large hematoma, arose after the surgery. The physical problems required that plaintiff be hospitalized and that he undergo further surgery in late March of 1971. Plaintiff's claim of malpractice relates to the surgical procedure and the postoperative care given by these defendants. The jury returned a verdict of no cause of action and plaintiff appeals.[1]

---

[1] The complaint also included a derivative claim for Mrs. Banks. Plaintiff is used in the singular to describe both claims throughout this opinion.

# I

Plaintiff challenges the fact that a urologist was allowed to testify about the standard of care for a general practitioner or answer hypothetical questions about breach of that standard. Such testimony is allowed if the specialist knows the standard of care to which he testifies. *Siirila v Barrios,* 398 Mich 576; 248 NW2d 171 (1976), *Callahan v William Beaumont Hospital,* 400 Mich 177; 254 NW2d 31 (1977).

The urologist did not answer questions about the one area he admitted he was unfamiliar with—prescribing medicine over the phone. The remainder of his testimony was properly admitted on the trial court's finding that the doctor was familiar with the appropriate standard of care.

# II

Plaintiff claims on appeal that Dr. Harvey Lewis should not have been allowed to testify because he was not listed on the pretrial summary, GCR 1963, 301.10,[2] and that if properly called, his testimony should have been limited to a denial that he had discussed vasectomies with plaintiff's expert. Plaintiff's expert, when asked about the basis of his opinion, had testified that he had discussed vasectomies with other doctors, including Dr. Lewis.

Under the rule, a trial court's decision to allow an unlisted witness to be called is largely a matter of discretion. *Murphy v Sobel,* 66 Mich App 122; 238 NW2d 547 (1975), *Jamison v Lloyd,* 51 Mich App 570; 215 NW2d 763 (1974), *lv den,* 392 Mich 771 (1974). The court's discretion extends as well to the scope of testimony given by the unlisted

[2] Plaintiff places no reliance on Wayne County Circuit Court Rule 12.1.

witness. There was no abuse of that discretion here.

## III

Over plaintiff's objection that they were inadmissible under MCLA 600.2146; MSA 27A.2146, the trial court admitted records from the Lafayette Clinic which included history and diagnosis. The trial court was correct in accepting these records. The evidence was used to test the credibility of plaintiff's expert (who had relied on these records in making his diagnosis) and to impeach plaintiff's testimony concerning the effect the surgery had on his sex life. *Schwartz v Triff,* 2 Mich App 379; 139 NW2d 907 (1966), *lv den,* 378 Mich 720 (1966), *Osberry v Watters,* 7 Mich App 258; 151 NW2d 372 (1967). The records were not introduced to prove the truth of the matters recorded, but rather, to impeach.

Plaintiff also challenges the admission of a portion of the records from Metropolitan Hospital. The facts contained in these records were corroborated by Dr. Kohler, the subsequent treating physician who testified for plaintiff. There was no reversible error on this point. *Shinabarger v Phillips,* 370 Mich 135; 121 NW2d 693 (1963).

## IV

Plaintiff also challenges the trial court's refusal to give a requested instruction on breach of contract. The allegations which supported the breach of contract count were repeated in the count alleging negligence. The jury found no negligence. The complaint and proofs did not support the requested instruction on breach of contract. *Howell v Outer*

*Drive Hospital,* 66 Mich App 142; 238 NW2d 553 (1975), *lv den,* 397 Mich 871 (1976).

## V

Plaintiff claims he was entitled to an instruction that the absence of a notation in defendants' records could be considered as evidence that the event did not occur. The Supreme Court recently rejected this contention. *Siirila, supra,* at 594–597. Plaintiff's attorney was allowed to argue the effect of the missing notation to the jury. That is all he was entitled to do.

## VI

Plaintiff claimed at trial that he had not consented to Dr. Lerman's attempt to drain the hematoma on March 24. In instructing on this point, the trial court stated:

"If you find that the operation performed by the Defendant on March 24, 1971 was performed without the patient's consent, then the Defendants committed an act of assault and battery for which they are liable in damages as I shall further explain.

"I should say, in this respect, too, that a patient may give consent to the operation in a number of ways. He may expressly consent by oral agreement or by signing a formal written permission or he may give implied authority by his conduct."

Plaintiff argues that the instruction so far as it included implied consent was erroneous.

If a physician treats or operates on a patient without consent, he has committed an assault and battery and may be required to respond in damages. Likewise, if consent has been given but the scope of the consent is exceeded, there has been an

assault and battery. *Franklyn v Peabody,* 249 Mich 363; 228 NW 681 (1930). The necessary consent may be express or implied, however.

Courts have resorted to the fiction of implied consent to justify an emergency procedure where there is no opportunity to obtain actual consent. But, the same term has been used to describe the consent inferred from the patient's action of seeking treatment or some other act manifesting a willingness to submit to a particular course of treatment. See cases collected in Anno: 56 ALR2d 695, §§ 2, 3.

The court's instruction in this case dealt with the second type of implied consent. The testimony given by plaintiff on cross-examination would support such an instruction. The jury could reasonably infer from that testimony that plaintiff, by presenting himself for further treatment, continuing to complain of the swelling and pain, and because of the different circumstances and acts by the doctor from plaintiff's previous visits where only an examination had been performed, had given his implied consent to the procedure which followed. The instruction was proper. *Kritzer v Citron,* 101 Cal App 2d 33; 224 P2d 808 (1950). See also, *Mims v Boland,* 110 Ga App 477, 481–483; 138 SE2d 902, 906–907 (1964).

*Shulman v Lerner,* 2 Mich App 705; 141 NW2d 348 (1966), relied upon by plaintiff, does not require a different result. The question in that case was not whether the issue had been properly presented to the jury, but rather, whether the circuit court, sitting as a trier of fact, had erroneously concluded that no consent could be implied. This Court merely held that the lower court's conclusion was not clearly erroneous.

## VII

The other allegations of error made by plaintiff have been examined and found not to require reversal.

Affirmed. Costs to appellees.