VICTOR LAMBELET ET AL., APPELLANTS, V. HARRY NOVAK ET AL., APPELLEES.

404 N.W.2d 28

Filed April 17, 1987.    No. 85-401.

Joseph Ginsburg of Erickson & Sederstrom, P.C., for appellants.

Otto H. Wellensiek of Wellensiek, Rehmeier & Kelch, for appellees.

BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

Plaintiffs-appellants, Victor and Juanita Lambelet, husband and wife, and their daughter, Sylvia Lambelet Driskell, filed their petition in the district court for Nemaha County, Nebraska, seeking damages against defendants-appellees, Harry and Norma Novak, in connection with the purchase of a house located on 1.06 acres in Nemaha County. Plaintiffs set out three "causes of action," seeking damages. The first cause of action pled the alleged fraud of defendants in advising plaintiffs that the existing water system to the residence was in good operating condition for domestic purposes and would supply potable water, when, in fact, the water was contaminated and unfit for human use. The first cause sought damages for the fair and reasonable cost of replacing the water system to furnish potable water. The second cause of action sought damages for "physical detriment and injury" from drinking the contaminated water. The third cause alleged that defendants knew, or should have known, that the use of "sprays, chemicals and herbicides . . . would further contaminate water from the well," but that defendants caused the area of the well, which was located on land retained by defendants, to be sprayed, and thus caused the well to be unusable. Plaintiffs sought damages of $25,000 on the first and third causes of action, and general damages on the second.

Defendants generally denied all the allegations of the petition and, with regard to the first cause of action, alleged that the house had been sold "as is," that no representation had been made, and that plaintiffs had full knowledge of the condition of the premises at the time the purchase contract was executed.

The case was tried to a jury. After the plaintiffs rested, defendants moved for a directed verdict on all three causes of

action. The trial court sustained the motion. Plaintiffs timely appealed to this court, assigning as error the actions of the trial court in directing a verdict in favor of defendants and in sustaining objections to some of plaintiffs' exhibits. We affirm.

Our review of an appeal from an order dismissing plaintiffs' case at the conclusion of the plaintiffs' evidence is controlled by the rule that a directed verdict is proper only where reasonable minds cannot differ and can draw but one conclusion from the evidence. *Vice v. Darm Corp.*, 224 Neb. 1, 395 N.W.2d 524 (1986); *Greening v. School Dist. of Millard*, 223 Neb. 729, 393 N.W.2d 51 (1986). Further, the parties against whom the verdict is directed are entitled to have every controverted fact resolved in their favor and to have the benefit of every inference which can reasonably be drawn from the evidence. If there is any evidence which will sustain a finding for the parties against whom the motion is made, the case may not be decided as a matter of law. *Kahrhoff v. Kohl*, 219 Neb. 742, 366 N.W.2d 128 (1985); *Whitaker v. Burlington Northern, Inc.*, 218 Neb. 90, 352 N.W.2d 589 (1984).

Plaintiffs' evidence, when viewed in the light most favorable to plaintiffs, shows the following. Plaintiffs, together with two other children of Victor and Juanita Lambelet and the husband and child of Sylvia Lambelet Driskell, were looking for a residence for the group. Plaintiffs had lived together in Johnson County, Nebraska, for 16 years before selling that acreage in 1977 and moving to Texas. The group returned to Nebraska in May of 1983 in trailers and were staying at a state park in Beatrice, Nebraska.

In driving in the area sometime in May 1983, plaintiffs saw a two-story house in Nemaha County, located on a farm which they found out was owned by defendants. On the next day plaintiffs called defendants, who lived in Nebraska City. Plaintiffs then saw Dale Cullen, an attorney in Auburn, Nebraska, who also called defendants, at plaintiffs' request. In the evening of the same day, plaintiffs met defendants at their home in Nebraska City. All matters between plaintiffs and defendants were handled solely by defendant Harry Novak, and "defendant," as used herein, refers to him. The parties discussed the possible purchase of the residence and 2 acres of

the farm, and defendant told plaintiffs he would be willing to sell. The parties agreed to meet on the premises the following morning.

At that meeting, plaintiffs examined the house and the parties discussed the purchase of the property. Plaintiffs saw that the house needed a "lot of repairs" and that the pump motors in the basement were unhooked. Defendant stated he would get the motors in good working order before the contract was executed. Plaintiffs then discussed the expense of driving back and forth from Beatrice to do the house repairs themselves, and defendant suggested, "If you have trailers, why, you can just pull them here beside the house. No one's using it." There is nothing in the record indicating any representation made as to the condition of the water at this time.

Plaintiffs moved their trailers to the defendants' property that day, and continued to live in the trailers there until November of 1983. During this period of time defendant would come to the property to meet with the plaintiffs. On his second visit, the defendant was asked about the water. He replied, "There's plenty of water. It's good water; it's good spring water. . . . You have nothing to worry about."

A contract for the sale was to be drawn by Cullen, who was the attorney selected by, and acting on behalf of, the plaintiffs. The parties agreed that defendant would pay for Cullen's services. At a date not shown in the record, a proposed draft of the contract was given to the plaintiffs. Subsequently, the plaintiffs executed the contract in final form for the purchase of the property on October 3, 1983. A provision stating plaintiffs were "purchasing said real property, and any improvements thereon 'as is' " remained in the contract when it was signed by the plaintiffs. Plaintiffs testified they had reviewed the contract and suggested changes in it, but testified the changes were not all made by the attorney.

Approximately 2 days before signing the contract, the plaintiffs again asked defendant about the water supply. The plaintiffs testified they expressed their concern about the need for pure water. Sylvia Driskell testified that when asked whether or not he would guarantee the water to be good, the

defendant responded that he would. Juanita Lambelet testified at trial that the defendant said at this time, "I will guarantee the water. I cannot guarantee the machinery but I will guarantee the water to be pure and drinkable." Mrs. Lambelet and Mrs. Driskell testified that the defendant then took a drink of the water.

The plaintiffs moved into the house sometime in November of 1983. The pumps had been repaired, and this was the first time that any water was consumed from the tap. Shortly after the family began using the water they became nauseated, had headaches, and began vomiting. Plaintiffs continued to use the water between November of 1983 and March of 1984, when they stopped using the well water.

In their first cause, plaintiffs rely on the theory of false representation, and not on fraudulent concealment. This court has held that in order to maintain a cause of action for false representation the plaintiff must allege and prove by a preponderance of the evidence (1) that a representation was made; (2) that the representation was false; (3) that, when made, the representation was known to be false, or made recklessly without knowledge of its truth and as a positive assertion; (4) that it was made with the intention that the plaintiff should rely upon it; (5) that the plaintiff reasonably did so rely; and (6) that the plaintiff suffered damages as a result. *Nelson v. Cheney*, 224 Neb. 756, 401 N.W.2d 472 (1987).

Considering these elements, the record of the case at bar shows that plaintiffs have failed to maintain their first cause of action. Plaintiffs adduced evidence which, if believed, showed that defendant did make representations and that the representations were made with the intention that plaintiffs should rely on them.

Plaintiffs did not prove that the representations were false when made, however. With regard to the falsity of the statements, plaintiffs testified the defendant made those statements on two occasions: at the second time the property was viewed by plaintiffs in May of 1983, and again approximately 2 days before plaintiffs signed the contract on October 3, 1983. Plaintiffs did not use the water until sometime in November of 1983, and the water was not tested until

November 29, 1984. That test showed a high level of nitrates, but there was further testimony from plaintiffs' witness that the nitrate level in November of 1984 was not indicative of the levels of nitrates at the time the representations were made. The witness testified on cross-examination that levels of nitrates could fluctuate on a monthly basis. No evidence was adduced as to the quality of the water at the times the representations were made, although plaintiffs resided in close proximity to the well in question for more than 4 months before signing the contract. The trial court did not err in directing a verdict for defendants on plaintiffs' first cause of action.

Plaintiffs' second cause of action made the same allegations as those set out in their first cause, adding only that the water caused "plaintiffs and various members under their control" to becóme ill as a result of imbibing the "contaminated water." In addition to the problems of plaintiffs' proof as set out above, evidence was lacking as to the proximate causation of plaintiffs' illness, and the trial court properly directed the verdict, on this cause of action, for defendants.

Plaintiffs' third cause of action was based upon defendant's negligent use of sprays containing "highly dangerous and poisonous combinations of herbicides, weed killers and the like," resulting in rendering the well used by plaintiffs unusable. In a case in negligence, to establish a prima facie case the plaintiff must establish evidence of causation. *Hilt Truck Line v. Pullman, Inc.*, 222 Neb. 65, 382 N.W.2d 310 (1986); *Greening v. School Dist. of Millard*, 223 Neb. 729, 393 N.W.2d 51 (1986). In the case at bar plaintiffs did not establish any causal link between any farming operations of the defendant and the tainting of plaintiffs' well. Sylvia Driskell testified that she saw defendant's agents spraying his field, but there is nothing in the record showing what was being sprayed, when the spraying took place, or whether the spray contained any type of "poisonous combinations of herbicides, weed killers and the like." In the absence of any evidence as to what the defendant was spraying, and the effect of that spraying, the trial court properly dismissed plaintiffs' third cause of action.

Finally, plaintiffs argue the court erred in excluding plaintiffs' exhibits 1, 2, 3, 6, 7, and 8. The bill of exceptions

shows exhibits 3 and 8 were received in evidence. Exhibits 1 and 2 were state microbiology reports on water samples which showed on their face were taken on May 25 and 30 and June 4, 1984, by Victor Lambelet, one of the plaintiffs. Mr. Lambelet did not testify at the trial, and plaintiffs' witness, an employee of the state Department of Health, testified he did not know if the exhibits pertained to the well in question. Defendants' objections to exhibits 1 and 2 were properly sustained.

Exhibit 6 contained the state's "Rules and Regulations Governing a Private Water Well," and exhibit 7 was the state's "Rules and Regulations for the Design, Operations and Maintenance of Septic Tank Systems in Nebraska." Plaintiffs' petition contained no allegations concerning the failure of the well to conform to any regulations and no reference to any sewer system. The trial court properly sustained defendants' objection to these exhibits.

The action of the trial court in sustaining defendants' motion for a directed verdict on plaintiffs' petition was correct.

AFFIRMED.

KRIVOSHA, C.J., not participating.