IMOGENE JONES, APPELLANT, V. JAMES JEFFREY MALLOY, D.C., APPELLEE.

412 N.W.2d 837

Filed September 25, 1987.   No. 85-791.

Thomas R. Wolff, for appellant.

Joseph F. Bataillon and Robert M. Slovek of Sodoro, Daly & Sodoro, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

WHITE, J.

The plaintiff, Imogene Jones, appeals from the verdict in favor of the defendant, James Jeffrey Malloy, D.C. Her petition alleged two causes of action: first, that Dr. Malloy performed a chiropractic manipulation on her without her consent (battery); and second, that Dr. Malloy negligently failed to inform or explain the risks of the procedure he

performed upon her, resulting in a lack of informed consent. Dr. Malloy moved for and was granted a directed verdict on the battery issue, and the jury decided against the plaintiff on the informed consent issue.

Jones asserts on appeal that the trial court committed five errors warranting reversal: first, that the directed verdict in favor of the defendant on the battery issue (lack of consent) was improper; second, that an instruction on lack of consent was improperly rejected; third, that the court improperly denied the plaintiff one of her theories of recovery; fourth, that the court should have granted the plaintiff's motion for directed verdict on the issue of lack of consent; and fifth, that the court should have granted the plaintiff's motion for directed verdict on the issue of informed consent.

About October 1, 1975, Jones was operated on by Dr. Craig Poindexter for a herniated or ruptured disk in her lower back at the L5-S1 interspace. After rehabilitation she experienced no further back problems until late in 1981, when she suffered shoulder pain related to the waterbed she had recently acquired. This led her to seek Dr. Malloy's services. At this time he took a patient history, was informed of her previous back surgery, and treated her for her shoulder pain. She visited him six more times before her visit in the late morning of September 3, 1982, for treatment for a "crick" in her neck.

Dr. Malloy admitted at trial that "she [Jones] asked me not to work on her low back" and that she would not even permit him to x ray her lower back. Jones' testimony agrees with Dr. Malloy's about her concerns regarding her lower back, but thereafter the testimony from the two parties differs.

According to Jones, Dr. Malloy had never touched her lower back in the course of the treatments for her shoulder and neck pain until September 3, 1982. On that day he was treating her upper back, as he usually did, when suddenly he pressed sharply with the heels of his hands on her lower back. Jones compared the sensation as similar to being struck. She cried out in pain and arose from the treatment table. After receiving assurances from Dr. Malloy that he would manipulate only her neck, she again lay on the table. Dr. Malloy treated her neck without further incident, and Jones left, still in pain, for an

appointment she had in her capacity as a Mary Kay Cosmetics consultant. The pain worsened and ultimately resulted in surgery in Texas on March 28, 1983.

Dr. Malloy testified that he has never treated Jones' lower back. His practice was to palpate the spine, using a series of tests to look for imbalances, each time she would come into the office. He checked her pelvis each visit for signs of imbalance, and during the September 3, 1982, visit, the tests he performed, which involved touching her pelvis, revealed an alignment problem, an apparent posterior inferior rotation of the right ilium in relationship to the left. After testing her, he stated, "I'm going to manipulate your pelvis." Jones made no response. When he palpated her pelvis with his hand to locate the contact point where the tissue attaches, she reported tenderness but no sharp pain, which was to be expected due to the misalignment. He thrust downward to correct the position of the ilium. No change resulted, so he repeated the procedure from the other side. After four manipulations he achieved some correction, but did not proceed with other types of treatment due to her prohibition against working on her lower back.

Dr. Malloy testified that throughout the manipulations Jones never reported pain or told him to stop and that he would have stopped if she had requested it of him. After he manipulated her neck, she left the office. She called back several hours later, complaining of pain.

The table upon which Jones lay was designed to move so that when he thrust with his hand on her pelvis, the table would drop and the contact points move with a minimum of force or risk. Dr. Malloy testified that the manipulation presented no significant risks and that the risk to her was no greater because of her surgery than to the average patient. He manipulated the ilia at the sacroiliac joint which, for Jones, was 1 to 2 inches away from the lower back, or L5-S1 area, where she had had surgery. He contends that the area he manipulated is not part of the lower back.

Only one doctor of chiropractic, other than the defendant, testified as to the standard of care for chiropractors in the State of Nebraska. Dr. Michael Mueller testified that the pelvis is not considered to be part of the lower back and that, in his opinion,

he would feel authorized to adjust a patient's neck, thoracic, and pelvic areas, even if told not to treat the lower back. He further opined that the manipulation performed on Jones by Dr. Malloy was unlikely to rotate or to affect her lower back. He felt the risk posed by the manipulation to be insignificant and stated that the failure to discuss the risks did not violate the standard of care required in this situation. He also responded to Jones' allegation that Dr. Malloy had never touched her lower back before he suddenly came down hard across her lower back by saying that no chiropractor would thrust down upon an area with his hand without palpating the area first.

The parties called several orthopedic and neurological surgeons to the stand to testify on the issues of causation and damages. The diagnosis concurred upon is that the pain is due to a pinched nerve at the site of the previous surgery due to lateral recessed stenosis (narrowing) at the nerve root at the L5-S1 area. The opinions differ as to the cause of this problem, creating an issue of fact. Some testimony links it to the manipulation, while some considered the problem a consequence over time of the previous surgery, complicated by natural degenerative wear and tear and arthritic spurring and, therefore, not caused by the manipulation. Whether the manipulation or the packed bags of Mary Kay wares carried by Jones in her job caused the symptom to flare was also at issue, as was the amount of damages.

Appellant's first four assignments of error relate to the issue of initial consent to treatment. The district court sustained defendant's motion for directed verdict on this issue.

Appellant first argues that the district court erred because it based its ruling on an inapplicable statute of limitations. Plaintiff's amended petition alleged that defendant's failure to obtain consent to perform treatment to the lower back area constituted a battery. The argument presented by defendant in furtherance of the motion for a directed verdict asserted that the statute of limitations had run as to battery. Neb. Rev. Stat. § 25-208 (Reissue 1985) provides that an action for battery must be brought within 1 year and an action for malpractice must be brought within 2 years. The plaintiff's first petition was filed 1 year 3 months 3 days after the treatment in question occurred.

The record does not give a clear indication as to the basis for the trial judge's decision on the directed verdict. Immediately preceding the ruling defendant argued that the motion was based on the fact that the statute of limitations had run as to battery. If this was the basis of the district court's decision, we hold that the court was in error; however, in this case the error was harmless. Medical treatment is invariably performed in good faith for the patient's benefit, and not for antisocial reasons. Further, it is the failure to obtain adequate consent, which is usually an unintentional omission, that is the grounds for the complaint, rather than an intentionally injurious act. *Trogun v. Fruchtman*, 58 Wis. 2d 569, 207 N.W.2d 297 (1973). The identical claim was submitted in the malpractice action.

Requiring consent to treatment is more a recognition of a patient's right to self-determination than a preventative of battery or right to be free from contact. We hold that when an issue of consent to medical treatment is raised, the controlling statute of limitations is that for malpractice actions.

This is not to say that plaintiff was denied an action based on lack of initial consent to treatment. We begin with the proposition that consent to treatment will be presumed, in the absence of fraud or misrepresentation. *Mosslander v. Armstrong*, 90 Neb. 774, 134 N.W. 922 (1912). As a practical matter, health professionals cannot be required to obtain express consent before each touch or test they perform on a patient. Consent may be express or implied; implied consent may be inferred from the patient's action of seeking treatment or some other act manifesting a willingness to submit to a particular course of treatment. *Banks v Wittenberg*, 82 Mich. App. 274, 266 N.W.2d 788 (1978).

Appellant nowhere alleges that she gave no consent to be treated by Dr. Malloy, nor does she allege fraud or misrepresentation. It can be implied that appellant consented to treatment by Dr. Malloy by her voluntary act of seeking such treatment. The question of whether Dr. Malloy overstepped the bounds of that initial consent by failing to inform his patient of the risks associated with manipulation of her pelvis is an issue of negligence analyzed according to his duty of disclosure under the circumstances in this case. It is an issue of informed

consent.

In this case, even if the district court erroneously directed a verdict on the issue of initial consent to treatment (battery) based on a view that the battery statute of limitations had run, there was no prejudice to plaintiff's case. The basis for the plaintiff's malpractice claim was grounded in the law of informed consent. The trial court was not required to instruct the jury on a battery/lack of consent theory. The first four assignments of error are without merit.

Appellant's fifth assignment of error states that the district court should have granted her motion for directed verdict on the issue of informed consent. Based on the following analysis, we hold that plaintiff's motion for a directed verdict was properly overruled on the issue of informed consent.

The Legislature has defined informed consent within the Nebraska Hospital-Medical Liability Act, Neb. Rev. Stat. § 44-2816 (Reissue 1984), as follows:

Informed consent shall mean consent to a procedure based on information which would ordinarily be provided to the patient under like circumstances by health care providers engaged in a similar practice in the locality or in similar localities. Failure to obtain informed consent shall include failure to obtain any express or implied consent for any operation, treatment, or procedure in a case in which a reasonably prudent health care provider in the community or similar communities would have obtained an express or implied consent for such operation, treatment, or procedure under similar circumstances.

It is clear that the provisions of Neb. Rev. Stat. §§ 44-2801 et seq. (Reissue 1984) apply only to those health care providers who "qualify" under the act. In this case involving a chiropractor, the act apparently does not apply. To begin with, the appellee does not plead the protection of the act. Further, after review of the legislative history of the act, it is at best ambiguous as to whether it would apply to chiropractors, even if they attempted to qualify thereunder.

However, this court believes that the informed consent language contained within §§ 44-2816 and 44-2820 correctly and accurately reflects the majority view of the law in this

country today. The majority of states adhere to the "professional" theory of the nature of a physician's duty of disclosure in informed consent cases. See, Studer, *The Doctrine of Informed Consent: Protecting the Patient's Right to Make Informed Health Care Decisions*, 48 Mont. L. Rev. 85 (1987); 61 Am. Jur. 2d *Physicians, Surgeons, etc.* § 188 (1981). This court recently held that Nebraska, through its Legislature, has committed to such a "professional" theory in malpractice cases based on lack of informed consent. *Smith v. Weaver*, 225 Neb. 569, 407 N.W.2d 174 (1987). For the sake of uniformity of law and given that this theory is the majority view, we choose to adopt the language of §§ 44-2816 and 44-2820 for purposes of malpractice actions against chiropractors. Other jurisdictions have likewise held that the rules of law pertaining to medical malpractice, including informed consent, apply to chiropractors as they would to physicians. *Roberson v. Counselman*, 235 Kan. 1006, 686 P.2d 149 (1984); *Bakewell v. Kahle*, 125 Mont. 89, 232 P.2d 127 (1951); *Hartfiel v. Owen*, 618 S.W.2d 902 (Tex. Civ. App. 1981).

The principal issue in this case is whether Dr. Malloy was negligent based on a breach of his duty to disclose the risks inherent in manipulating plaintiff's pelvis in light of her admonition regarding her lower back. The extent of Dr. Malloy's duty must be measured against what information other chiropractors in the locality or in similar localities would have ordinarily provided under like circumstances. On several occasions this court has held that whether a specific manner of treatment by a physician demonstrates a lack of skill or knowledge or a failure to exercise reasonable care is a matter usually to be proved by expert testimony. *Marshall v. Radiology Assoc.*, 225 Neb. 75, 402 N.W.2d 855 (1987). Such expert testimony is also required for informed consent cases as to the standard of care for a particular profession. *Smith v. Weaver, supra*. In addition,

> Before the plaintiff may recover any damages in any action based on failure to obtain informed consent, it shall be established by a preponderance of the evidence that a reasonably prudent person in the plaintiff's position would not have undergone the treatment had he or she

been properly informed and that the lack of informed consent was the proximate cause of the injury and damages claimed.

§ 44-2820.

At trial plaintiff presented expert chiropractic evidence from Dr. Mueller as to the proper standard of care. In addition, numerous orthopedic and neurological surgeons testified as to causation and damages. All of this evidence created issues of fact that only the trier of fact could determine. If there is any evidence which will sustain a finding for the party against whom the motion for directed verdict is made, the case may not be decided as a matter of law. *Lambelet v. Novak*, 225 Neb. 229, 404 N.W.2d 28 (1987).

The proper standard of care and duty of disclosure, the issue of causation, and the extent of damages were all questions for the jury after hearing the testimony in this trial. Plaintiff's motion for a directed verdict on the issue of informed consent was properly overruled.

AFFIRMED.

KRIVOSHA, C.J., not participating.