REQUESTED BY: Mary Dean Harvey, Director, Department of Social Services; Dr. Gregg F. Wright, Director, Nebraska Department of Health; Joseph P. Foster, Acting Director, Nebraska Department on Aging; and Dale B. Johnson, Director, Nebraska Department of Public Institutions
1: What are an adult patient's rights to make decisions about his or her medical or surgical treatment?
2: If an individual has a right to refuse medical or surgical treatment, what are his legal rights to formulate and utilize advance directives such as living wills and durable powers of attorney in effectuating those rights?
3: Whether a guardian or spouse has authority to request, on behalf of an incompetent or competent patient, termination of life support.
Competent adult patients have certain rights with
As used in the Patient Self-Determination Act, an "advance directive" refers to any written instructions, "recognized under state law," appointing a person to make medical decisions and/or describing the kind of health care the individual wants or does not want, if the individual ever loses the ability to make health care decisions.
A competent patient acts on his or her own behalf and where state law does not expressly authorize a guardian or spouse to approve termination of life support they have no authority to do so.
In order to meet the requirements of the federal Patient Self-Determination Act, you have requested our opinion on several questions regarding a patient's rights to make health care decisions. Under the Patient Self-Determination Act, Congress requires all states and most health care facilities to comply with new Medicare and Medicaid laws concerning a patient's rights to control decisions about their health care. Under this Act, the State of Nebraska must develop a written description of the law of the state concerning advance directives.
I. The Right to Informed Consent
Informed consent is generally required under Nebraska law for medical treatment. See Jones v. Malloy, 226 Neb. 559,564, 412 N.W.2d 837 (1987) ("Requiring consent to treatment is more a recognition of a patient's right to self-determination than a preventative of battery. . . .") (emphasis added); Neb.Rev.Stat. § 44-2816 (Reissue 1988) (definition of informed consent); Neb.Rev.Stat. § 71-3609 (Reissue 1990). In fact, a competent patient generally possesses a common law right not to consent, that is to refuse medical treatment. "The common-law doctrine of informed consent is viewed as generally encompassing the right of a competent individual to refuse medical treatment." Cruzan v. Director, Missouri Department of Health, ___ U.S. ___, 110 S.Ct. 2841, 111 L.Ed.2d 224
(1990). See also 6A CJS Assault Battery § 7(b) at 325 and cases cited at n. 87.
II. Constitutional Rights
While never specifically addressed by a Nebraska court, it is likely a competent person has a constitutionally protected 14th Amendment liberty interest in refusing unwanted medical treatment. Cruzan, 1105 S.Ct. at 2851. See also Jones, 226 Neb. at 564. Outside the common law doctrine of informed consent, the seminal case determining medical rights of both competent and incompetent patients is Cruzan v. Director, Missouri Department of Health. In Cruzan, guardians of a non-terminal patient who had allegedly been in a persistent vegetative state brought an action seeking judicial sanction of their wish to terminate artificial hydration and nutrition (food and water) for the patient. In ruling that the guardians of the incompetent patient in question did not present clear and convincing evidence allowing food and water to be withdrawn, the Court distinguished the rights of competent and incompetent patients.
A. Application of Cruzan to Competent Patients
As concerns a competent patient's medical rights, a competent patient being one who is able to make an informed and voluntary choice to refuse medical treatment under state law, the Court formulated a balancing test to determine the extent of such rights. The relevant balancing test involves a state's "unqualified interest in the preservation of human life to be weighed against the constitutionally protected interests of the individual." Cruzan, 110 S.Ct. at 2853. In describing this test's application, the Court did not state absolutely that a competent person's rights in all instances outweigh a state's interests. However, the Court strongly implied that in the majority of cases, a competent person's decisions regarding his or her medical treatment are superior to whatever interests a state might have. The Court stated that "a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment." Id. at 2851.
Thus, under Cruzan in most circumstances state incursions into the body are not authorized, where that action is contrary to a competent individual's choice of treatment. This result seems not to differ from an analysis under the common law doctrine of informed consent.
B. Application of Cruzan to Incompetent Patients
As to incompetent patients, the Cruzan Court interpreted rights of patients to select their own medical treatment as being far less expansive than the nearly absolute rights competent individuals may exercise. While a competent patient's choices for medical treatment are protected liberty interests, the Fourteenth Amendment's due process clause permits a state to require clear and convincing evidence to prove an incompetent person's wishes to withdraw life sustaining medical treatment. Id. at 2854. The balancing test weighing an individual's liberty interest against a state's interest in preserving human life is applied whether a patient is competent or incompetent. However, in cases involving incompetent patients, before courts implement the balancing test delineated in Cruzan, a state may require that clear and convincing evidence be presented establishing an incompetent patient's choices regarding medical treatment. If clear and convincing evidence establishes an incompetent patient's medical choices, the pertinent individual liberty interest can be determined, which then allows for a proper balancing of that interest against a state's interest.
The "clear and convincing" standard was stated in Cruzan to be "defined in this context as `proof sufficient to persuade the trier of fact that the patient held a firm and settled commitment to the termination of life supports under the circumstances like those presented.'" Id. at 2855, n. 11, quoting In re Westchester County Medical Center on Behalf of O'Connor, 72 N.Y.2d 517, 534 N.Y.S.2d 886, 892,531 N.E.2d 607, 613 (1988). In Cruzan, the clear and convincing standard was not met by the petitioner. The Missouri Supreme Court found that evidence adduced at trial that a housemate of Ms. Cruzan stated that the petitioner, while competent, had mentioned that she did not want to face life as a vegetable did not amount to clear and convincing proof of the patient's desire to have hydration and nutrition withdrawn. The Court held that it was not constitutional error for the Missouri Supreme Court to reach this conclusion. Cruzan at 2855.
III. Artificial Nutrition and Hydration
In Cruzan, the Court stated, "we assume that the United States Constitution would grant a competent person a constitutionally protected right to refuse lifesaving hydration and nutrition." Id. at 2852. This statement was an assumption for purposes of the Cruzan case and not the court's holding. It is clear that if such a right does exist it is a limited right. The United States Constitution does not contain a "right to die." Id. at 2851. A person's liberty interest in refusing hydration and nutrition must be balanced against the interest of the state in preserving life. Id. at 2851-52. There is no absolute constitutional right to starve one's self to death. The Supreme Court stated in Cruzan "we do not think a state is required to remain neutral in the face of an informed and voluntary decision by a physically able adult to starve to death." Id. at 2852. "The Due Process Clause protects an interest in life as well as an interest in refusing life-sustaining medical treatment." Id. at 2853.
Suicide is no longer a crime in Nebraska. State v. Fuller, 203 Neb. 233, 241, 278 N.W.2d 756 (1979). However, it is not a constitutional right. Cruzan,110 S.Ct. at 2859-62 (Scalia, J., concurring). In Cruzan, Justice Scalia noted "American law has always accorded the state the power to prevent, by force if necessary, suicide — including suicide by refusing to take appropriate measures necessary to preserve one's life. . . ." Under Nebraska law, force may be used in some circumstances to prevent another person from committing suicide. See, e.g. Neb.Rev.Stat. §28-1412(7) (Reissue 1989).
The Nebraska legislature, over the past fourteen years, has repeatedly declined to enact "living will" legislation. See Transcript of Floor Debate on LB88, February 8, 1988, pp. 8157-8159 (Statement of Senator Labedz). Consequently, living wills are not statutorily recognized or legally enforceable in the State of Nebraska. Likewise, Nebraska has not adopted legislation creating a durable power of attorney for purposes of health care decisions.
Advance directives, while not statutorily recognized or legally enforceable, are not expressly prohibited by Nebraska law. This means a health care provider is not legally obligated to follow such a directive, but may do so as long as doing so does not constitute assisting suicide. Assisting suicide is expressly prohibited by Nebraska law. Neb.Rev.Stat. § 28-307 (Reissue 1989). Whether a health care provider will recognize advance directives not authorized by law, but not prohibited by law, is a decision each health care provider will need to make in consultation with the health care provider's own legal counsel.
The United States Supreme Court has stated that in states where advance directives are legally recognized, "a state may properly decline to make judgments about the `quality' of life that a particular individual may enjoy, and simply assert an unqualified interest in the preservation of human life to be weighed against the constitutionally protected interests of the individual." Cruzan,110 S.Ct. at 2853. The Constitution permits a state (and health care providers) to require a "clear and convincing" standard of proof for evidence of an incompetent's wishes as to the withdrawal of treatment. Id. at 2852, 2854.
As to incompetent patients, a state is not required to accept the substituted judgment of close family members as to medical decisions. The Supreme Court has stated "We do not think the Due Process Clause requires the State to repose judgment on these matters with anyone but the patient herself." Cruzan, 110 Sup.Ct. at 2855. (Rejecting the argument that a state must accept the `substituted judgment' of close family members even in the absence of substantial proof that their views reflect the views of the patient.) Id. at 2855-56. This holding was reached because "there is no automatic assurance that the view of the close family members will necessarily be the same as the patient's would have been had she been confronted with the prospect of her situation while competent." Id. at 2856.
So, while the Court has recognized an individual's liberty interest in selecting his or her medical treatment, it has found no constitutional mandate requiring states to accept the substitute judgment of a family member. Cruzan did not address whether states must recognize a family member's judgment to terminate life support where there is clear and convincing evidence establishing what decision the patient would have made had he or she remained competent. "We are not faced in this case with the question of whether a state might be required to defer to the decision of a surrogate if competent and probative evidence established that the patient herself had expressed a desire that the decision to terminate life-sustaining treatment be made for her by that individual." Id. at 2856 n. 12. Thus, Cruzan does not mandate recognition of the validity of a durable power of attorney for health care in Nebraska, in the absence of a state law authorizing it.
Respectfully submitted,
DON STENBERG Attorney General
Royce N. Harper Senior Assistant Attorney General 15-06-14.91
APPROVED BY:
_______________________________ Attorney General