*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TRAVIS WRIGHT and MELANIE WRIGHT,

Plaintiffs-Appellants,

v

BRADLEY ROSENBERG, M.D., COMP MC, PLLC, doing business as COMPREHENSIVE UROLOGY, MICHIGAN HEALTHCARE PROFESSIONALS PC, doing business as COMPREHENSIVE UROLOGY, JOHN DOE, JANE DOE, R.N., AGENTS, SERVANTS, NURSES, NURSES AIDES, STAFF HEALTH CARE PROVIDERS, and EMPLOYEES,

Defendants-Appellees.

UNPUBLISHED
April 15, 2026
9:44 AM

No. 374382
Oakland Circuit Court
LC No. 2024-204851-NO

Before: CAMERON, P.J., and BORRELLO and SWARTZLE, JJ.

PER CURIAM.

Plaintiffs Travis and Melanie Wright appeal by right the trial court's order dismissing their claims on summary disposition. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

In this case, plaintiff[1] underwent a vasectomy that was undisputedly initiated without having first administered a local anesthetic. The vasectomy was performed by Dr. Bradley Rosenberg. According to Dr. Rosenberg's surgical notes, he injected what he thought "was 1% Xylocaine [i.e. lidocaine] into the scrotal skin," waited approximately a minute, and then made an incision in the scrotum to begin the procedure. However, Dr. Rosenberg noticed that plaintiff was

---

[1] For purposes of this opinion, we will simply refer to both Travis Wright and his spouse Melanie Wright as plaintiff because the claim by his wife for loss of consortium is derivative of Travis's claims.

"having significant pain," so Dr. Rosenberg "looked and realized that instead of Xylocaine, the staff had filled the syringe with sodium bicarbonate." Dr. Rosenberg's notes continue, stating that "we filled a syringe with 1% Xylocaine, re-injected the area around the vas [deferens], and proceeded with the case, as he was now properly numb." Dr. Rosenberg completed the procedure.

Plaintiff had signed a consent form before the procedure. The consent form indicated in relevant part that plaintiff voluntarily sought a vasectomy for sterilization and that the "technical aspects of the procedure have been described including the use of local anesthetic . . . ."

Stacy Zachar was the medical assistant at Comprehensive Urology working with Dr. Rosenberg during the procedure at issue in this case. Zachar testified in her deposition that her position did not require prior special training or education and that she was "trained on the job." She did not have a medical license and had been a medical assistant at Comprehensive Urology since January 2020.

Zachar testified that before plaintiff's procedure, she set up the instruments in a sterile manner and made sure that Dr. Rosenberg had all of the necessary supplies and instruments. She then brought plaintiff into the room, explained what was going to happen, answered any questions, obtained plaintiff's signature on the consent form, and prepared him for the procedure, all in accordance with her normal patient routine. Zachar remembered starting the procedure with Dr. Rosenberg in this case. She testified that he injected what he though was lidocaine, and plaintiff indicated that it hurt when Dr. Rosenberg attempted to begin the procedure. Dr. Rosenberg stopped and gave another injection, and Zachar left the room to attend to other patients. Zachar had filled the syringe from a bottle that she also thought was lidocaine as part of her normal set-up procedure. When Zachar returned to check in with Dr. Rosenberg, he held up the bottle of sodium bicarbonate from the counter and asked if it was the bottle Zachar had used. She answered affirmatively. At her deposition, Zachar acknowledged that the bottles are labeled with their contents, that the drawer from which she got the bottle usually contains lidocaine but not sodium bicarbonate, and that she apparently did not look at the labels. After discovering the mistake, Zachar and Dr. Rosenberg filled a new syringe with lidocaine, injected the lidocaine, and continued with the vasectomy.

Zachar admitted in her deposition, "I made a mistake and didn't look at the bottle and gave the wrong medication, yes, I agree with that." She also acknowledged that plaintiff would have received the correct anesthetic if not for her mistake. Dr. Rosenberg also acknowledged that Zachar made an error by giving him the wrong medication. However, Dr. Rosenberg did not believe that the mistake caused plaintiff any harm.

There was evidence that plaintiff subsequently experienced various forms of emotional dysfunction, mental anguish, and posttraumatic stress disorder (PTSD) after the vasectomy.

In his complaint, plaintiff alleged claims of medical malpractice, ordinary negligence, assault and battery/lack of informed consent, and res ipsa loquitur.[2] The parties subsequently stipulated to dismissing Dr. Rosenberg from the case without prejudice.

Prior to the procedure, plaintiff executed an informed consent form expressly documenting his voluntary pursuit of vasectomy for sterilization. The form further acknowledged that the technical components of the procedure, including the administration of local anesthetic, had been thoroughly explained.

Stacy Zachar functioned as the medical assistant at Comprehensive Urology during the procedure in question, assisting Dr. Rosenberg. In her deposition, Zachar stated that her role required no formal medical training or licensure and that she was trained exclusively on the job. She had been employed as a medical assistant at Comprehensive Urology since January 2020. According to Zachar's deposition, her pre-procedural duties entailed preparing the surgical instruments in a sterile fashion, ensuring Dr. Rosenberg had all requisite supplies, escorting plaintiff into the operatory, providing procedural explanations, addressing plaintiff's inquiries, obtaining the signed consent form, and executing standard patient preparation protocols.

Zachar recalled initiating the procedure alongside Dr. Rosenberg, who administered an initial injection he believed to be lidocaine. Plaintiff reported significant pain upon commencement of the procedure, prompting Dr. Rosenberg to halt and administer an additional injection. Zachar, responsible for preparing the syringe, had inadvertently drawn sodium bicarbonate instead of lidocaine, consistent with her typical setup protocol. Upon her return to the operatory, Dr. Rosenberg identified the error, confirming with Zachar that the syringe had been filled from a bottle of sodium bicarbonate. Zachar conceded in deposition that, although the bottles were clearly labeled and the storage drawer was customarily limited to lidocaine, she failed to verify the label. The error was rectified by preparing a new syringe with lidocaine, after which the procedure was completed without further incident.

Plaintiff's complaint asserted causes of action for medical malpractice, ordinary negligence, assault and battery predicated on lack of informed consent, and res ipsa loquitur. The parties later stipulated to the dismissal of Dr. Rosenberg from the litigation without prejudice.

The trial court denied plaintiff's motion for summary disposition but issued rulings that narrowed the disputed issues. The court classified the action as one of ordinary negligence rather than medical malpractice, reasoning that the alleged error—substituting sodium bicarbonate for lidocaine—was committed by an unlicensed medical assistant, and the complaint did not allege improper performance of the surgical procedure itself. The court further observed that the defendants had conceded duty and breach, but factual disputes persisted regarding causation and damages.

Subsequently, the trial court granted defendants' motion for summary disposition, dismissing all claims. The res ipsa loquitur count was dismissed as the trial court concluded that

---

[2] As previously indicated, Travis's wife also alleged a claim for lack of consortium.

-3-

it does not constitute an independent cause of action. The assault and battery claim was rejected due to an absence of evidence showing intent to harm or to act beyond the scope of plaintiff's consent; the misadministration of sodium bicarbonate was deemed inadvertent. The court reaffirmed its prior determination characterizing the case as ordinary negligence, not medical malpractice.

With respect to plaintiff's negligence claim, the trial court determined that plaintiff failed to establish any compensable physical injury proximately caused by the administration error, as any pain experienced prior to lidocaine injection was considered a transient symptom rather than a cognizable injury. Swelling, ecchymosis, and testicular discomfort were deemed expected sequelae of the procedure for which plaintiff had provided informed consent. The court further held that plaintiff's claim for emotional distress was precluded in the absence of physical injury, given plaintiff's significant pre-existing mental health conditions and the lack of evidence of improper performance of the vasectomy.[3] Plaintiff subsequently appealed, challenging the trial court's dismissal of the assault and battery and negligence claims.

## II. STANDARD OF REVIEW

It is evident from the trial court's opinion and order that it granted summary disposition on the challenged claims by considering material outside the pleadings and by relying on MCR 2.116(C)(10). See *Silberstein v Pro-Golf of America, Inc*, 278 Mich App 446, 457; 750 NW2d 615 (2008) ("Where a motion for summary disposition is brought under both MCR 2.116(C)(8) and (C)(10), but the parties and the trial court relied on matters outside the pleadings, as is the case here, MCR 2.116(C)(10) is the appropriate basis for review.").

A trial court's ruling on a motion for summary disposition is reviewed de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Summary disposition is warranted under MCR 2.116(C)(10) if "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). The trial court must consider the parties' evidence in the light most favorable to the opposing party to determine whether "the record leaves open an issue upon which reasonable minds might differ." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (quotation marks and citation omitted).

## III. ASSAULT AND BATTERY

On appeal, plaintiff first argues that the trial court erred by granting summary disposition on the assault and battery claim because there was evidence that defendants exceeded the scope of the consent given by plaintiff by beginning the procedure without using a local anesthetic when plaintiff had only consented to a vasectomy *with* a local anesthetic.

---

[3] The trial court also dismissed the loss of consortium claim because it was derivative of all other claims.

"[B]attery is a 'dignitary tort.' " *Janetsky v Co of Saginaw*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket No. 166477), slip op at 30 (citation omitted). "A battery is the wilful and harmful or offensive touching of another person which results from an act intended to cause such a contact." *Espinoza v Thomas*, 189 Mich App 110, 119; 472 NW2d 16 (1991). "An assault is defined as any intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." *Id*. As our Supreme Court has explained, the essence of a civil battery claim is " 'the offense to the dignity involved in the unpermitted and intentional invasion of the inviolability of [the plaintiff's] person and not in any physical harm done to his body[.]' " *Janetsky*, ___ Mich at ___; slip op at 30, quoting Restatement Torts, 2d (October 2024 update), Battery: Offensive Contact, § 18, comment c (alteration in original).

Relevant to the healthcare context, Michigan recognizes the common-law right to freedom from unwanted, nonconsensual physical interference with bodily integrity, as well as the "corollary doctrine of informed consent." *In re Rosebush*, 195 Mich App 675, 680; 491 NW2d 633 (1992). Thus, a physician who treats or operates on a patient without consent has committed a battery and may be required to respond in damages. *Id*.; *Werth v Taylor*, 190 Mich App 141, 146; 475 NW2d 426 (1991); *Zoski v Gaines*, 271 Mich 1, 9-10; 260 NW 99 (1935). Furthermore, "if consent has been given but the scope of the consent is exceeded, there has been an assault and battery." *Banks v Wittenberg*, 82 Mich App 274, 279-280; 266 NW2d 788 (1978), citing *Franklyn v Peabody*, 249 Mich 363; 228 NW 681 (1930).

Plaintiff asserts that his consent to the vasectomy was expressly conditioned on the administration of proper anesthesia. By initiating the procedure and making an incision absent adequate anesthetic, plaintiff contends that defendants exceeded the scope of the informed consent and thereby committed a battery.

In *Franklyn*, our Supreme Court considered a paradigmatic instance of a physician exceeding the boundaries of patient consent during surgery. There, the plaintiff consented to hand surgery and was anesthetized accordingly. During the operation, the surgeon encountered an unanticipated tendon issue requiring a tissue graft, which he obtained by making an incision in the plaintiff's right thigh—without prior consent and while the plaintiff remained unconscious. The plaintiff subsequently brought suit, alleging that the thigh operation resulted in a muscle hernia and consequent pain and disability.

The *Franklyn* Court held that the unauthorized incision and operation on the plaintiff's thigh constituted assault and battery, absent any emergent threat to the patient's life or health that could have justified the unconsented procedure. The Court emphasized that a surgeon's implied authority during a patient's unconsciousness does not extend to performing operations beyond the scope of express consent, nor does it permit procedures involving risks not contemplated or authorized by the patient. *Id*. at 366–68.

Here, Dr. Rosenberg[4] performed a vasectomy, the procedure to which plaintiff had consented. However, the record indicates that the initial incision was made without administration of lidocaine, as the syringe intended for anesthetic delivery was erroneously filled with sodium bicarbonate. Defendants conceded the error, describing it as inadvertent. Upon discovering the mistake, Dr. Rosenberg administered lidocaine and completed the procedure. There is no evidence or argument suggesting intentional conduct by any defendant in administering the incorrect substance or knowingly proceeding without anesthetic. Rather, the undisputed evidence establishes that the error was one of negligence, not intent.

Plaintiff contends that the incision made without local anesthetic constitutes battery, as his consent was expressly limited to a vasectomy performed with appropriate anesthesia. He asserts that this deviation rendered the procedure materially different from that to which he consented, invoking the rationale of *Franklyn* to support a battery claim.

By contrast to *Franklyn*, plaintiff was not subjected to an operation on a different anatomical site or of a fundamentally distinct nature; he consented to a vasectomy, and that procedure was performed. The gravamen of plaintiff's complaint concerns the way the procedure was carried out—specifically, that it was initiated without anesthesia, resulting in increased pain but no alteration in the essential character or outcome of the surgery. Furthermore, there is no evidence of *intent* to inflict the complained-of contact (i.e., incision without anesthetic). See *Espinoza v Thomas*, 189 Mich App at 110, 119.

This case underscores the critical distinction between battery and negligence in the context of alleged medical malpractice. While no published Michigan appellate authority directly addresses this distinction, persuasive analysis can be found in a Virginia Supreme Court decision.[5]

In *Mayr v Osborne*, 293 Va 74, 77; 795 SE2d 731 (2017), the Virginia Supreme Court addressed the issue whether a plaintiff could proceed against a surgeon on a battery theory, or was confined to a negligence theory, where the surgeon mistakenly fused level C6-C7 of the patient's spine instead of level C5-C6. The evidence in that case showed that the surgeon believed that he had operated on the C5–C6 level, but a post-operation x-ray revealed that he had actually operated on the C6-C7 level. *Id*. at 78. The surgeon subsequently performed a corrective surgery. *Id*. A lawsuit ensued, and the matter proceeded to trial solely on the theory that the surgery went beyond the scope of consent given and thus constituted a battery. *Id*.

In addressing the distinction between a battery in the medical treatment context, which the court termed a "technical battery," and negligence, the court stated as follows:

---

[4] Dr. Rosenberg is no longer a party to this action.

[5] Michigan courts consistently recognize that "caselaw from sister states and federal courts is not binding precedent but may be relied on for its persuasive value" *In Re Jestila*, 345 Mich App 353, 359 n4; 5 NW3d 362 (2023).

Our precedent thus establishes that a technical battery is present where (1) the patient placed terms or conditions on consent for a particular procedure, and the doctor ignored those terms or conditions; (2) the physician intentionally performed an additional procedure beyond the procedure the patient consented to; or (3) the physician intentionally performed a different procedure or one that differs significantly in scope from the procedure for which the patient provided consent. In the present case, the physician set about performing the exact procedure the patient consented to, on the intended structure of the body (here, the spine), but unintentionally, either by negligence or as an unforeseen complication, performed the procedure in a location on that structure different from the one that was targeted (here, an adjacent level of the spine). Our precedent does not address a situation like this one. We therefore must resolve whether a technical battery extends to this scenario.

The tort of battery and the tort of negligence both provide avenues of recovery to compensate persons who have been wronged by the actions of a health care provider. The interests protected by the tort of battery and the tort of negligence, however, are different. Battery protects two personal interests: "first, the interest in the physical integrity of the body, that it be free from harmful contacts; second, the purely dignitary interest in the body that it be free from offensive contact." "The central core of battery is relatively straightforward: the defendant must respect the plaintiff's wishes to avoid intentional bodily contact." A physician may perform an operation with great skill and nevertheless be liable for a battery if the patient did not consent.

The tort of negligence serves a different function. In addition to providing compensation, "[t]he purpose of imposing tort liability for negligence is . . . to encourage individuals to exercise reasonable care."

Another important difference between battery and negligence is that "[b]attery in tort law is exclusively an intentional tort, so if defendant accidentally comes in contact with the plaintiff, that action would sound in negligence." Intent in this context means "(a) that the actor engage[d] in volitional activity and (b) that he intend[ed] to violate the legally protected interest of another in his person." Negligence, in contrast, consists of the "failure to exercise ordinary care." Intentional conduct is not required. Rather, "heedlessness, inattention, [and] inadvertence" can be sufficient for liability in negligence. [*Id*. at 80-82 (citations omitted; ellipsis and alterations in original).]

The court determined that a physician is not subject to liability for battery absent evidence permitting an inference that the physician intentionally performed a procedure contrary to the patient's will or one that materially deviated from the scope of the patient's consent, and that the physician acted with the intent to disregard such consent regarding the procedure or its scope. *Id*. at 83-84. Thus, the court found no liability where the patient expressly consented to the surgical procedure performed, the surgeon did not undertake any materially different or additional procedure, and there was no evidence of intent to engage in unauthorized contact. *Id*. at 84.

Similarly, there is no evidence here that defendants intended to effectuate nonconsensual contact with the plaintiff by commencing the operation prior to administration of a local anesthetic. The plaintiff consented to a vasectomy, the procedure performed was a vasectomy, and there is no indication that the procedure materially deviated from that to which the plaintiff had consented. The trial court properly granted summary disposition in defendants' favor on the assault and battery claim. *Id*.

## IV. NEGLIGENCE

Plaintiff further contends that the trial court erred in granting summary disposition to defendants on the negligence claim.

The trial court dismissed the negligence claim on the grounds that plaintiff failed to establish any actual physical injury resulting from defendants' initiation of the vasectomy without local anesthesia; any pain experienced prior to lidocaine injection was deemed a mere "symptom" insufficient to constitute a cognizable physical injury.

Plaintiffs do not dispute the trial court's characterization of the claim as one of ordinary negligence, as opposed to medical malpractice. To prevail in a negligence action, a plaintiff must establish duty, breach, causation, and harm. *Kandil-Elsayed v F & E Oil, Inc*, 512 Mich 95, 110; 1 NW3d 44 (2023). Michigan law requires proof of an actual injury to person or property as a prerequisite for recovery under a negligence theory. *Henry v Dow Chem Co*, 473 Mich 63, 73; 701 NW2d 684 (2005). The distinction between "injury" and "damages" is fundamental within Michigan tort law; recovery is not permitted for "bare damages" absent a present, physical injury. *Id*. at 77-78; *Hannay v Dep't of Transp*, 497 Mich 45, 63; 860 NW2d 67 (2014). Tort damages encompass all legal and natural consequences of an injury, which may include economic loss, pain and suffering, and emotional distress. *Id*. at 65.

Here, the sole "injury" alleged by plaintiff consists of pain resulting from the absence of local anesthetic at the onset of the vasectomy, along with subsequent mental distress and PTSD. These are properly characterized as "damages" rather than evidence of a cognizable personal injury from which such damages might arise. *Henry*, 473 Mich at 73, 77-78; *Hannay*, 497 Mich at 63, 65. Plaintiff conflates the concepts of "injury" and "damages." As explained in Henry,

> It has simply always been the case in our jurisprudence that plaintiffs alleging negligence claims have also shown that their claims arise from present physical injuries. We are not aware of any Michigan cases in which a plaintiff has recovered on a negligence theory without demonstrating some present physical injury. Thus, in all known cases in Michigan in which a plaintiff has satisfied the "damages" element of a negligence claim, he has also satisfied the "injury" requirement. [*Henry*, 473 Mich at 75.]

Consistent with these principles, "common law recognizes emotional distress as the basis for a negligence action only when a plaintiff can also establish *physical* manifestations of that distress." *Id*. at 79.

Furthermore, even accepting as true that the failure to properly use lidocaine in this case caused the pain and mental anguish of which Travis complains, plaintiff nonetheless failed to establish the necessary element of harm, or actual personal injury, required to make a successful negligence claim. *Kandil-Elsayed*, 512 Mich at 110; *Henry*, 473 Mich at 73. Consequently, the trial court did not err by granting defendants summary disposition on plaintiffs' negligence claim.

Affirmed. Defendants having prevailed in full are entitled to costs. MCR 7.219(A).

/s/ Thomas C. Cameron
/s/ Stephen L. Borrello
/s/ Brock A. Swartzle